## Nagle, Incompetent

*Richard Reifsnyder*, for guardian.

*Manfred Landau*, for claimant.

MACELREE, P. J., October 13, 1962.—By decree of the Court of Common Pleas of Chester County entered December 7, 1953, Frank Gilbert Nagle was adjudged an incompetent and the National Bank of Chester County and Trust Company, West Chester, was duly appointed guardian of his estate.

Thereafter, miscellaneous proceedings in connection therewith were conducted in the Court of Common Pleas of Chester County.

By decree of said court of common pleas dated April 28, 1958, jurisdiction of the above entitled incompetent's estate was transferred to the Orphans' Court of Chester County.

Subsequent thereto divers proceedings for the benefit of the incompetent were instituted in the said or-

phans' court at the instance of the guardian through its counsel of record.

The most recent proceeding is the subject one sur petition for authorization to continue a business in which the incompetent has an interest and for leave to invade the corpus of the incompetent's estate for his support and for the payment of creditors.

As a part of said petition is the following averment: "That the said Frank Gilbert Nagle engaged the services of Romain C. Hassrick, Esquire, of the Philadelphia bar, who has presented a statement for the same in the amount of $500.00."

The petition prayed the court, inter alia, for leave to pay the statement submitted by Romain C. Hassrick, Esq.

At a hearing held August 9, 1962, counsel for the guardian orally moved to amend the petition so as to show that the guardian was not requesting leave to make payment to counsel but merely bringing said statement to the court's attention on behalf of Mr. Hassrick, and praying to further amend the prayer of the petition to "call to the Court's attention the statement submitted by counsel."

Such amendments were allowed.

Claimant not being present, after considerable discussion in open court this court deferred any disposition of the claim of Romain C. Hassrick, Esq., until such time as he had an opportunity to appear before the court and justify his claim and satisfy the court that it was a proper claim to be paid from the incompetent's estate.

For such purpose the matter was set down for hearing on the following audit list, to wit, September 20, 1962.

On such latter date, in order to afford claimant, then present, a further opportunity to offer evidence and/or submit a brief in support of his claim, the hearing was

again deferred until October 4, 1962, at which time claimant, Romain C. Hassrick, Esq., appeared, together with Manfred Landau, Esq., his counsel.

Afforded a full opportunity to offer testimony in support of his claim, the testimony offered, other than that directed toward the extent and alleged value of the services, was fragmentary.

### Findings of Fact

In February of 1961, at the instance of friends of the incompetent, Romain C. Hassrick, Esq., undertook to negotiate the transfer of Mr. Nagle from the Embreeville State Hospital to which he had been committed as a patient either to a private home or some private institution.

In that connection, claimant had a series of interviews and correspondence, set forth by claimant in his memorandum submitted to the court . . .

As a result of such negotiations, Mr. Nagle was transferred to the Brandywine Nursing Home, a private institution.

The cost of maintenance of the incompetent at the Embreeville State Hospital prior to his transfer was at the rate of $6 per day, or approximately $180 per month.

The expense of maintenance of the incompetent at Brandywine Nursing Home is $200 per month plus an additional item of $25 or $30 per month for incidentals.

Claimant testified that in his opinion, in a case involving some other party other than an incompetent his services were worth $2,500, and involving an incompetent, Mr. Nagle being such a person, claimant thought that $500 was a reasonable fee.

The services renderd by claimant were undertaken in good faith.

The services rendered resulted in no benefits to the incompetent's estate.

No request was ever made of the guardian to negotiate for the transfer of the incompetent to a nursing home.

The guardian, from the inception of the proceedings, has had the services of competent counsel.

No petition was ever presented by claimant to the Orphans' Court of Chester County for leave to represent the incompetent.

No testimony was offered as to the nature of the commitment or the mental condition of the patient either by way of diagnosis or prognosis or of any physical or mental benefits which the patient might reasonably be expected to derive from the transfer.

In his brief, counsel for claimant contends that an identical situation is fully discussed in Weightman's Estate, 126 Pa. Superior Ct. 221.

Apart from the fact that Weightman's Estate was decided prior to the Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, we are of opinion that all Weightman's Estate decided was that appellants had been refused their right to a hearing. Speaking for a majority of the court, the late Judge Cunningham said:

"*All we now decide* is that they are entitled to their day in court and to an opportunity to place upon the record the relevant facts upon which they rely in support of their respective claims." (Italics supplied.)

This court, it believes, has not committed such basic error as refusing claimant an opportunity to have his claim considered on its merits.

Further, the services for which compensation is sought are clearly distinguishable from those recited in Weightman's Estate.

No professional services were rendered here seeking a judicial determination of the incompetent's rights.

We proceed to a consideration of the merits of the claim.

It may well be that the incompetent is for the time being better satisfied as a patient at the Brandywine Nursing Home than he was as a patient at the Embreeville State Hospital. It may well be that in days or weeks to come, friends of the incompetent might seek to have him transferred, with the consent of the authorities at the Embreeville State Hospital, to some other institution.

We are of opinion that any such desire should properly be communicated in the first instance to the guardian and that only upon the guardian's refusal to act under proper circumstances should the incompetent's estate be subjected to the payment of counsel fees for services of counsel employed by relatives or friends.

Williams Estate, 9 Fiduc. Rep. 681, in a well considered opinion by Judge Boyle, recites the rule of law "that all fees and charges against the estate of an incompetent must be on the most moderate scale."

It is further authority for the legal principle that an overlapping of effort does not justify allowing duplication of counsel fees.

Where a number of lawyers, even if employed by the guardians of an incompetent's estate, render services which are identical, overlapping or related, they are bound by the rule of law which restricts the compensation to be allowed to the amount which would represent one reasonable fee to one counsel: Fischer Estate, 1 Fiduc. Rep. 83.

Absent any direction from the guardian, we are of opinion that the services rendered by Mr. Hassrick under the circumstances in the instant case were those of a volunteer and that he might properly seek compensation from those who engaged his services.

To hold otherwise might well render this incompetent's estate liable to successive claims by any number of counsel whom the incompetent himself or well-inten-

tioned friends might seek to interest in the incompetent's welfare.

While we do not hold that leave of court is a prerequisite we do hold that under the circumstances here present either direction from or approval by the guardian was a prerequisite.