## Weightman's Estate.

Argued November 13, 1936.

222

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Ambler Williams*, with him *Cross, O'Connor & Adams*, for appellants.

*Lemuel B. Schofield*, with him *B. H. Oehlert, Jr.* and *Harry J. Alker, Jr.*, for appellees.

OPINION BY CUNNINGHAM, J., March 10, 1937:

In January, 1935, William Walker Weightman, then a mental patient in Norristown State Hospital, to which he had been summarily committed in June, 1934, upon the certificate of two qualified physicians under the provisions of Section 302, Article III, of the Mental Health Act of July 11, 1923, P. L. 998, 1001, 50 PS §42, exercised the rights given him (Section 601, Article VI, P. L. 1020, as amended by the Act of April 27, 1925, P. L. 337, 50 PS §171) to communicate with counsel and to procure a writ of habeas corpus to determine whether or not he was properly detained. He retained Hon.

Ambler Williams, one of the appellants, as his counsel to prepare and conduct the habeas corpus proceedings in Montgomery County and through him arranged for the professional services of two expert alienists, Charles W. Burr, M. D., and Frederic H. Leavitt, M. D., the other appellants. These physicians made examinations of Weightman, appeared in court as witnesses upon several occasions, and testified that he had been restored to capacity. The common pleas of Montgomery County, however, remanded Weightman to the hospital.

On June 22, 1934, the court below had entered its decree, under the Act of May 28, 1907, P. L. 292, as amended by the Act of April 1, 1925, P. L. 101, 50 PS §941, et seq., adjudging Weightman a weak-minded person, unable to take care of his property and liable to become the victim of designing persons, and appointing Provident Trust Company and David Bortin, Esq., "guardians to take care of [his] property and estate." No guardian of Weightman's person was appointed nor was he committed to any institution by the court below.

When the first account of the guardians, showing a balance of more than $60,000 then in their hands, came on for audit and distribution on March 6, 1936, the appellants presented their respective claims for allowance out of Weightman's estate.

The merits of these claims are not now before us because the auditing judge peremptorily refused to entertain or hear them. They were not founded upon any contract with Weightman, but each was based upon a quantum meruit and proof was offered in support of each. The auditing judge definitely refused to receive any evidence relative to the circumstances under which the legal and medical services of appellants had been rendered, or to the extent and value thereof. His attitude toward appellants and their claims may be illustrated by a few excerpts from the record. After Judge Williams had stated the history of the habeas

corpus proceedings in Montgomery County and the nature and extent of his services and those of the other appellants, the record continues: "The Court: What I want to know, Judge, is who employed these doctors. Mr. Williams: I did. The Court: Who employed you? Mr. Williams: Weightman. The Court: He cannot employ any one; he is incompetent. He was adjudicated incompetent in this court to do any business, make any contracts. That is why we appointed a guardian for him. No one can deal with him excepting at his peril. Mr. Williams: Well, here is a man who has been committed to an institution for the insane. The Court: I mean, so far as he is concerned, I suppose he imagines that he is perfectly sane and everybody else in the world is insane, and he would hire a lawyer every week to get him out. That is the very thing that was adjudicated that he could not do. You see, I am not thinking of you as a designing person, but one of the reasons why a guardian was appointed for him was that he was likely to become a victim of designing persons. It was to protect him against his own folly, and therefore any one who undertakes to represent him does so at his peril. Mr. Williams: I understand that. These claims are not based on a contract between Weightman and myself or between Weightman and these physicians, but as a matter of fact, he was an inmate of a state institution, and he had the right to have a writ of habeas corpus allowed to test whether he should be kept confined in that institution for any further length of time. The Court: I guess he had the right, but you cannot charge his estate with anything. ...... Mr. Williams: He was not committed to the State Hospital by this court. The Court: That does not make any difference. This is his estate we are trying to preserve. We cannot allow a claim like that; it has no basis. ...... Mr. Williams: He brought the habeas corpus. The Court:

It is an unheard of proceeding. You cannot go up and represent this man that is weak-minded and charge him with legal services and medical services or any other kind of services. Nobody can deal with him excepting at his peril. Any one that wants to deal with him must deal through his guardian. He has a guardian. He cannot deal for himself. Mr Borton: [representing other claimants] Would your Honor look at the Act of 1923, the Health Act, which deals with that point? I think the Acts of 1923 and 1925 specifically guarantee to a man the right to a writ of habeas corpus. The Court: Who says anything about the right to a writ of habeas corpus? Certainly any one has a right to a writ of habeas corpus. You are confusing the two things. I am not saying that he has not the right to ask for a writ. He can do that morning, noon, and night. Mr. Borton: That is our position here. The Court: Your position is untenable. Mr. Williams: I am not prepared to argue this matter until after an exhaustive research, but these claims were not controverted by counsel for the accountants. If your Honor will reserve this question—The Court: No, I have decided it. It is not a valid claim. You can have an exception to my ruling and argue it at a later date. ...... Mr. O'Connor: I am entering my appearance for Judge Williams for his claim. I also wish to make an offer of proof of the quantum meruit. The Court: I am not saying anything about the value of the services. All I am saying is that lawyers are crazy if they represent him."

A portion of the decree of distribution reads: "The following claims are not allowed: Dr. Burr, $250; Dr. Leavitt, $250; J. A. Williams, $250." Appellants' exceptions to the disallowance of their claims were dismissed by the court, in banc, and these appeals followed.

The position taken at the hearing by the learned

auditing judge, and reiterated and elaborated in the opinion subsequently written by him for the court below, is tantamount to a judicial declaration that *under no circumstances whatsoever* may attorneys or medical experts who have rendered professional services to an inmate of a mental hospital, in the course of habeas corpus proceedings instituted to secure his release, receive compensation out of the patient's estate, unless their employment has first been approved by the court which appointed the guardians of his estate. A majority of the members of this court do not agree with this proposition. Of course, we do not mean by this statement to say that the claims of these appellants should have been allowed. Whether they should or should not be paid out of this incompetent's estate cannot be judicially determined until all the circumstances under which the services were rendered have been established in due course of law. That has been prevented up to this time by the refusal of the auditing judge to receive the offered proofs. Nor are we to be understood as approving of the method adopted by appellants in this case. The effect of the decree appointing the guardians was the same as that of a decree appointing a committee of a lunatic. They became bailiffs of the court; Weightman became its ward; and his estate is in custodia legis: *Voshake's Estate,* 125 Pa. Superior Ct. 98, 189 A. 753, and cases there cited. Under the Mental Health Act, supra, Weightman had a clear right to select and communicate privately with counsel. When he selected Judge Williams as his counsel to conduct the habeas corpus proceedings, a better method would have been for his counsel to have petitioned the court below for leave to represent Weightman and for authorization to employ psychiatrists in his behalf—reasonable compensation for such legal and medical services to be paid out of the estate. Any abuse of discretion in refusing a proper petition could

have been corrected in an appellate court. In this connection it must be borne in mind that the proceedings by which Weightman was committed to the hospital were summary and he was given the express right by the legislature to a writ of habeas corpus in order that he might have his day in court upon the question of "whether or not he [was] properly detained as a mental patient." That act clearly contemplates that the patient shall be represented in such proceedings by counsel and we have not been referred to any requirement that leave to proceed must be first obtained from the court which has appointed guardians of the patient's estate.

As we understand the opinion of the court below it contains several other conclusions with which we cannot agree. One is that the general rule to the effect that an incompetent's estate is liable to persons furnishing him with necessaries is applicable only when they are furnished to him while he is at large. The theory of the opinion seems to be based upon the assumption that the hospital furnishes everything essential for the patient. It is scarcely reasonable to assume the hospital would supply the legal and medical services incident to procuring the discharge of a patient having a substantial estate. Another is that the only services which may be regarded as necessaries are those "advantageous and beneficial to the estate." This theory disregards the personal rights of a mental patient.

In view of the present state of this record, we need not now discuss the numerous authorities cited on both sides. It is enough to say there is respectable authority for the proposition that services of the kind here involved, rendered from a proper motive and under circumstances indicative of good faith, may, in the exercise of a sound discretion by an auditing judge, be considered necessaries properly chargeable in a reasonable amount to the estate of a mental patient. Depriva-

tion of liberty, however necessary and proper, is the exercise of a sovereign power and our legislature has, by the provisions of the Mental Health Act to which we have referred, provided safeguards against mistake or fraud. Every mental patient is entitled to the benefit of the professional services necessary to the judicial determination of his rights. The result of the habeas corpus proceedings is immaterial to the question now under consideration; but when alienists of the eminence of Doctors Burr and Leavitt testify that confinement of a patient is no longer necessary it cannot be doubted that the proceedings were instituted in good faith and upon substantial grounds.

As we view the matter, every claim of the nature of those here presented against the estate of an incompetent must be disposed of upon its individual merits and in the exercise of a sound judicial discretion controlled by its particular circumstances. Discretion of that character cannot be judicially exercised, or reviewed, until all the facts and circumstances surrounding the rendition of the services have been brought before the court. These appellants have been refused their right to a hearing. All we now decide is that they are entitled to their day in court and to an opportunity to place upon the record the relevant facts upon which they rely in support of their respective claims.

So much of the decree of March 26, 1936, as disallows the claims of appellants is vacated and the record is remitted for further proceedings not inconsistent with this opinion.

DISSENTING OPINION BY KELLER, P. J.:

While the weak-minded person was entitled to his writ of habeas corpus and a hearing thereon, it does not follow that his estate, which is in custodia legis, is responsible for the payment of the attorneys and doctors who may have acted on his behalf. If it were so, this

particular weak-minded ward could quickly dissipate his estate. The court was familiar with his unbalanced actions and was justified in refusing to allow his estate to be thus depleted. I would affirm the order.

Judge BALDRIGE joins in this dissent.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.