**Carver Estate**

*John Wills Beach,* for guardian.
*Susan Howard Swope,* for claimants.

MacPHAIL, *P.J.*, December 6, 1977—

## OPINION SUR PETITION

In this case, petitioner as guardian of the estate of an incompetent has requested that we enter an appropriate order with respect to a bill for counsel fees submitted to it by counsel allegedly employed by the incompetent. That counsel has also submitted a petition requesting that we direct the guardian to pay reasonable counsel fees, costs and expenses for a divorce action to be instituted on the incompetent's behalf. We directed that an evidentiary hearing be held. Following the hearing, we had the benefit of a brief from counsel for the guardian

which opposed the payment of the bill for counsel fees as well as the payment of any bills for future services to be rendered by that counsel to the incompetent. Also, we had the benefit of a brief from counsel for the ward in support of her position in both matters.

Factually, it will appear that the incompetent is a young man approximately 29 years of age. In 1972, he was severely injured in an automobile accident. He was a Vietnam veteran. He has been a patient at the Lebanon Veterans Hospital since January of 1974. He is married and has a young daughter five years of age. His parents and some brothers and sisters are living. Pursuant to his wife's petition filed February 18, 1977, we adjudicated Mr. Carver to be incompetent on April 11, 1977, under the provisions of subsection 1 of section 5501 of the Probate, Estates and Fiduciaries Act of June 30, 1972, P.L. 508, as amended, 20 P.S. §5501. The medical testimony at the adjudication hearing indicated that Mr. Carver is paralyzed on his right side, cannot speak and cannot swallow. While it appeared that he could communicate to a limited degree by pointing or shaking his head, it was likewise obvious from the testimony that Mr. Carver could become the victim of designing persons. It was for that reason that we entered the decree of adjudication.

At the hearing on the petitions now before us, Mr. Carver's physician testified that in his opinion Mr. Carver was incapable of entering into contractual obligations on March 25, 1977, and that, in fact, the incompetent's condition had not changed since November of 1976. The prognosis for Mr. Carver is very poor.

It also appears that Mr. Carver and his wife are

adversaries. Indeed, at the adjudication hearing Mrs. Carver testified that she had seen her husband only one time in the past two years and that she would get a divorce from her husband if she could. One of the issues in controversy now is whether we should authorize the payment of counsel fees in order that divorce proceedings may be instituted on behalf of Mr. Carver. In this regard we must also note that one reason for the wife's petition for adjudication of her husband as an incompetent was to secure support for herself and her child since payments formerly made to her directly had been discontinued, presumably at Mr. Carver's request. These sums are substantial ($260.80 per month from Social Security and $1,303 per month from the United States Veterans Administration).

Ms. Susan Swope, Esq. has submitted to the guardian a bill for $1,635 for services rendered to Mr. Carver from March 31, 1977, to June 18, 1977. Attached to the bill is an agreement for professional services, dated March 25, 1977, bearing the mark of Mr. Carver and the names of witnesses, including a notary public. The record discloses that Ms. Swope had previously been paid the sum of $1,717.50 by the Veterans Administration from Mr. Carver's account held by them at the time (prior to adjudication). That bill was for services rendered to Mr. Carver from February 28, 1977, through March 31, 1977.

The trust officer of the guardian bank testified that the ward's estate was in excess of $16,000. He also stated that the guardian had no opinion with respect to the reasonableness of the bill for counsel fees but was concerned about the ward's competency to execute such a contract. The same witness said that the guardian had no opinion with respect to the divorce proceedings. Nevertheless, it ap-

pears from the briefs of counsel that the guardian has refused to institute such proceedings on the ward's behalf.

Under the provisions of section 5536 of the Probate, Estates and Fiduciaries Act of 1972, supra, 20 P.S. §5536, we may authorize the guardian to expend from income or principal of the ward's estate such sums as may be necessary for the care, maintenance or education of an incompetent. Our law seems to be to the effect that contracts made by an incompetent prior to an adjudication of incompetency are voidable and that after an adjudication all transactions with the incompetent are presumptively invalid: Feely Estate, 173 Pa. Superior Ct. 441, 98A. 2d 738 (1953). Persons who are not sui juris may nevertheless bind themselves for "necessaries." Lancaster County National Bank v. Moore, 78 Pa. 407 (1875). Legal services rendered to an incompetent person, if rendered from a proper motive under circumstances indicative of good faith, and if such services are of a character that they are reasonably necessary for the welfare of the incompetent, may fall in the category of "necessaries." Feely Estate, supra, and Weightman's Estate, 126 Pa. Superior Ct. 221, 190 Atl. 552 (1937). The law implies an obligation on the part of an incompetent person or his estate to reimburse those who may have furnished necessaries to the incompetent: Arnold's Estate, 253 Pa. 517, 98 Atl. 701 (1916).

Our first issue is whether the contract for services dated March 25, 1977, is enforceable. If it is, our further inquiry must be whether the bill for services is reasonable. If the contract is unenforceable, our inquiry then is whether counsel may recover on quantum meruit for necessary services. As we noted, contracts entered into prior to an adjudication of incompetency are not void but voidable.

Here, the timing of the various events may be important. The petition for adjudication of incompetency was filed February 18, 1977. The contract was executed March 25, 1977. Mr. Carver was adjudicated April 11, 1977. In addition, we have the medical testimony of Mr. Carver's attending physician that in his opinion Carver could not comprehend sufficiently to enter into such a contract on March 25, 1977, that Carver was incompetent on that date and that Carver had been incompetent since November of 1976. We are of the opinion that the facts and circumstances here are sufficient to render the written contract unenforceable, i.e., void.

Now we determine whether the services rendered by Ms. Swope were "necessary" as that term is defined in our law. It will appear that a substantial part of the bill for services relates to the adjudication hearing. Both counsel relied upon Weightman's Estate, supra, in support of their respective positions. In that case counsel instituted habeas corpus proceedings with respect to a patient in a mental hospital. Without deciding the question of whether or not such services should be compensated, the court did indicate that legal services may be compensable in certain cases, especially where such services were rendered to enforce the inmate's rights.

In the case before us, we have no doubt that counsel acted from a proper motive and in good faith to protect Mr. Carver's rights in an incompetency proceeding, especially in view of the circumstances existing between him and his wife. Certainly, one of an individual's most important rights is the right to his own property unencumbered by a guardianship. We conclude that Ms. Swope's serv-

ices to Mr. Carver with regard to the incompetency hearing were necessary and should be compensated. Since those services terminated April 11, 1977, and the bill is for services rendered to June 18, 1977, we must prorate the counsel fees to make a proper allocation for those services rendered to the incompetent prior to and including April 11, 1977, relating to the incompetency proceedings and those services rendered thereafter as well as those rendered prior to April 11, which were not concerned with such incompetency proceedings. Under all the circumstances, we feel that Ms. Swope should be compensated in the sum of $975 for professional services and $22 in out-of-pocket expenses.

Concerning those services rendered after the adjudication of incompetency, we are of the opinion that such services were not "necessary" and since we have held the express contract to be void, are not compensable from the ward's estate. As has been emphasized in prior cases, such a rule is necessary to protect the ward's estate from depletion, notwithstanding counsel's good faith: Nagle, Incompetent, 29 D. & C. 2d 107 (1962), and Armitage's Estate, 58 D. & C. 174 (1946).

Using the procedure suggested by Weightman's Estate, supra, Ms. Swope also seeks our approval for counsel fees for a divorce action by the ward. She insists that it will be possible to prove grounds for divorce, notwithstanding Mr. Carver's present condition and obvious inability to testify. She has even procured a social worker from the hospital who is willing to act as guardian ad litem for the ward in the divorce proceedings. As we have noted, the guardian of the estate has refused to institute such proceedings. In Campbell v. Gasparini, 171

Pa. Superior Ct. 173, 90 A. 2d 251 (1952), the court held that where a guardian of the estate had been appointed, only that guardian could institute legal proceedings on behalf of the ward but that the question of whether the guardian improperly refused to do so could be litigated. That case, however, preceded the adoption of Pa.R.C.P. 2051-2075 inclusive. Thus, in Finger et al. v. Finger, 88 D. & C. 478 (1954), it was held that a fair construction of Pa.R.C.P. 2051 and 2053 leads one to the inescapable conclusion that an action may be commenced now on behalf of an incompetent person by a guardian ad litem or the guardian of a ward's estate.

Assuming the court would have the right to appoint a guardian ad litem for the purpose of commencing a divorce action in the case now before us, the ultimate issue is whether an action in divorce a.v.m. can be maintained on behalf of an incompetent under Pennsylvania law. The answer appears to be in the negative. "There is, therefore, under the unwritten law, no right to a divorce a.v.m. exercisable by the representatives of a lunatic. In Pennsylvania, any other conclusion would create the incongruity of permitting someone other than the spouse to assert a desire to sever the marriage tie and to swear to the absence of collusion." 2 Freedman: Law of Marriage and Divorce in Pennsylvania, §504 (2d ed.). While the case authority for this conclusion is something less than totally satisfactory (see Baughman v. Baughman, 34 Pa. Superior Ct. 271 (1907): Hickey v. Hickey, 138 Pa. Superior Ct. 271, 11 A. 2d 187 (1940); and Krukowsky v. Krukowsky, 49 D. & C. 2d 651 (1970)), the explanation of the legislative history in Freedman's treatise is persuasive. The final enactment of section 18 of the Act of May 2, 1929, P.L. 1237, 23 P.S.

§18, clearly demonstrates that where a spouse is incompetent, our courts have jurisdiction to entertain complaints in divorce a.v.m. but *only* where such spouse is the defendant. Furthermore, there seems to be no doubt that the "unwritten law" is accepted even today by very reliable legal authorities. See 6 Goodrich-Amram 2d, Standard Pennsylvania Practice, Comment to Rule 2054(a).

Accordingly, but somewhat reluctantly, in the light of the circumstances in the case now before us, we conclude that Mr. Carver, having been adjudicated an incompetent, cannot maintain an action in divorce under the present divorce law of Pennsylvania. It follows that we cannot authorize the depletion of the ward's estate for counsel fees in a futile cause.

SPICER, *P.J.*, March 23, 1978—

## OPINION SUR EXCEPTIONS

This matter comes before the court at this time on exceptions to an order entered December 6, 1977.

That order, entered by MacPhail, *P.J.*, resulted from two petitions concerning payment of certain costs and bills from the incompetent's estate. The first petition was filed by the guardian of the incompetent's estate requesting an appropriate order concerning bills submitted to the guardian. The second petition was submitted by counsel who had been representing the incompetent prior to his having been adjudicated an incompetent. Counsel's petition requested the court to direct the guardian to pay counsel fees, costs and expenses of a divorce.

The order entered by the court directed the payment of some of the bills, disallowed others and dismissed the petition requesting moneys for a di-

vorce action. Although the order was not entered nisi, it was so treated under Orphans Court Rule 3.1 and Equity Rule 1517.

Exceptions were filed and were listed for argument December 27, 1977. However, that argument was continued and finally was held January 17, 1978.

In the meanwhile, there has been a change in judges in Adams County.

The first exception was to the conclusion of law that legal services rendered to Ronald J. Carver after the appointment of a guardian were not necessaries and therefore were not compensable from the incompetent's estate.

After a careful review of the evidence, the court finds the conclusion of law to have been the result of a correct application of the law to the factual situation. Therefore, this exception is dismissed.

The second exception is to the legal conclusion that a divorce proceeding cannot be maintained on behalf of an incompetent.

As worded, the exception might indicate the court has distinguished between an incompetent maintaining an action and an action being maintained on the incompetent's behalf. Since Pa.R.C.P. 2054 and Commentaries (see 6 Goodrich-Amram 2d, Standard Pennsylvania Practice, §2054(a):2) make it clear that any action, including a divorce, must be maintained by the incompetent, it is important to note the exact wording of the court's prior ruling. In its prior opinion the court stated, on page 7, as follows: ". . . . we conclude that Mr. Carver, having been adjudicated an incompetent, cannot maintain an action in divorce under the present divorce law of Pennsylvania."

In the opinion of court supporting the decree nisi, the court referred to such authority as Freedman,

Law of Marriage and Divorce in Pennsylvania, and 6 Goodrich-Amram 2d, Standard Pennsylvania Practice, §2054(a):1.

Freedman, supra, refers to law worded more or less as the exception is phrased, in speaking of actions maintained by the representative of a lunatic. Goodrich-Amram, supra, states, pp. 241, 242: "The guardian of an incompetent husband cannot bring an action for divorce. He may however bring an action for the annulment of the marriage on the ground of nullity because of incompetency at the time of the marriage ceremony."

As authority for this statement, there is cited the case of Krukowsky v. Krukowsky, 49 D. & C. 2d 651 (1970) (which was cited in the court's earlier opinion). The Delaware County Court in Krukowsky, supra, stated at p. 653: "Whereas the right to sue or defend upon grounds for divorce, like the right to enter or decline marriage, is thought to be a matter of personal choice and thus speaks to a status which is voidable only. . . . an annulment is merely declarative of an existing status."

In deciding whether or not we agree with the court's statement, it would appear that the court must enter the void-voidable thicket that has sparked so many debates, discussions and questions of semantics over the years. Some have said there is nothing that is void, only voidable, because the choice is always present to ignore the condition causing voidness. Others have said that proceedings involving void relationships only recognize status, as though the court examines a body and states "it's dead." It may appear that annulments arise from void relationships since the Act of May 2, 1929, P.L. 1237, 23 P.S. §12, speaks of marriages which were "absolutely void." However, the same section states that a party "may" have the marriage

declared "null and void." Furthermore, in the circumstance of a "void" marriage by reason of an existing previous marriage there are indications that the marriage is merely voidable: Act of August 22, 1953, P.L. 1344, 48 P.S. §1-17.

It is this court's opinion that the distinction between annulment and divorce is too fine to lend a satifactory basis for disposing of an incompetent's right to sue. Also, the court feels that cases referring to "lunatics" are also not particularly helpful.

Judge MacPhail recognized that the law in this area is somewhat less than totally satisfactory. It would seem on review that most of the authority in the area predates the concept of incompetency as is now presently embodied in our law.

The Act of June 30, 1972, P.L. 508, as amended, 20 P.S. §5501, defines an incompetent as follows:

"Incompetent means a person who, because of infirmities of old age, mental illness, mental deficiency or retardation, drug addiction or inebriety:

"(1) is unable to manage his property, or is liable to dissipate it or become the victim of designing persons; or

"(2) lacks sufficient capacity to make or communicate responsible decisions concerning his person."

By order dated April 11, 1977, the court declared Ronald J. Carver an incompetent because "the court finds that Ronald J. Carver may become the victim of designing persons."

The question then becomes whether a court, in taking away a person's right to manage his own property because the person may fall victim to a designing person, can also thereby automatically restrict a very important right of citizenship, the right to seek redress in a court of law.

It is settled that the right of a citizen of the coun-

try to sue for a divorce is an important one. In Boddie v. Connecticut, 401 U.S. 371, 383, 91 S. Ct 780, 28 L.Ed. 2d 113, 122 (1971), the United States Supreme Court stated that access to the courts for the purpose of procuring or applying for a divorce is the "exclusive precondition to the adjustment of a fundamental human relationship," and therefore, the due process clause prohibits a state from denying access to courts simply because of inablitiy to pay. In another opinion which this court finds relevant, the Supreme Court held that presumptions which deny basic civil rights violate the equal protection and due process clauses of the Fourteenth Amendment: Stanley v. Illinois, 405 U.S. 645, 92 S. Ct. 1208, 31 L.Ed. 2d 551 (1972).

It would therefore be this court's opinion that incompetents may not be denied the right to seek divorce simply and only because of the adjudication of incompetency. We feel that Stanley v. Illinois, supra, dictates a case by case determination.

The court is not unmindful of the dangers of allowing incompetents to sue for divorce through guardians. However, the danger does not seem to be such that careful and cautious review cannot control.