J-A18003-23 & J-A18004-23

2024 PA Super 4

| | | |
|---|---|---|
| ESTATE OF A.J.M., AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THE LYNCH LAW GROUP, LLC | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 962 WDA 2022 |

Appeal from the Order Entered July 22, 2022
In the Court of Common Pleas of Washington County Orphans' Court at
No(s): No. 63-21-1984

| | | |
|---|---|---|
| ESTATE OF J.A.M., AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: THE LYNCH LAW GROUP, LLC | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 963 WDA 2022 |

Appeal from the Order Entered July 22, 2022
In the Court of Common Pleas of Washington County Orphans' Court
at No(s): No. 63-21-1985

BEFORE: BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

OPINION BY BENDER, P.J.E.: **FILED: January 11, 2024**

Appellant, The Lynch Law Group, LLC, appeals from the orphans' court's

orders dated July 21, 2022, and entered on July 22, 2022, which denied its

amended petitions for the allowance of legal fees and costs filed in the underlying guardianship actions.[1]  After careful review, we affirm.

The orphans' court set forth the following relevant background in its Pa.R.A.P. 1925(a) opinion:

> Th[ese] appeal[s] arise[] out of Appellant's legal representation of [J.A.M. ("Wife")] and [A.J.M. ("Husband"), by and through Frank C. Botta, Esquire ("Attorney Botta")], in guardianship proceedings before the Washington County Orphans' Court. Appellant was not a party to the guardianship proceedings and was not appointed by the orphans' court to represent [Husband and Wife].  The guardianship proceedings were initiated by Husband and Wife's sons, [M.J.M. and J.A.M. ("Sons")], on November 5, 2021, who had been acting as the agents for their octogenarian parents[,][2] pursuant to a valid power of attorney [("POA")] dated June 25, 2021….  Upon discovering that their authority under the POA had been supplanted by a third[-]party corporate fiduciary, as a result of documents prepared by Attorney Botta, [Sons] immediately instituted the guardianship proceedings to protect their parents.  The guardianship petitions were filed on November 5, 2021, in Washington County Orphans' Court, docketed at No. CP-63-21-1985 for [Wife] and at No. CP-63-21-1984 for [Husband].
>
>> [2] According [to] the guardianship petitions filed [on] November 5, 2021, [Wife] was born [i]n March [of] 1938, and [Husband] was born [i]n March [of] 1936.  [Husband] died on July 17, 2022.
>
> After two days of hearings, the orphans' court adjudicated [Husband] and [Wife] as incapacitated persons[2] and entered

---

[1] For ease of disposition, we consolidate the appeals at Nos. 962 and 963 WDA 2022 *sua sponte*, as the issues in both matters involve the same parties and are closely related.  **See** Pa.R.A.P. 513.

[2] "'Incapacitated person' means an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his
*(Footnote Continued Next Page)*

separate orders appointing their sons as the plenary guardians of their respective estates and persons dated January 10, 2022. No appeal was taken from these orders. During the proceedings, Attorney Botta did not offer any expert testimony to refute the expert testimony presented documenting [Husband] and [Wife's] incapacity. In addition, [Attorney Botta] did not offer the testimony of [Husband] and [Wife] to attempt to dissuade the allegations of their incapacity or to contest their sons' appointment as guardians. From [its] failure to offer [Husband and Wife's] testimony, the orphans' court was compelled to draw the adverse inference that Appellant was aware that [Husband and Wife's] testimony would only support the court's finding of incapacity.

Although no appeal was taken from the adjudication of incapacity and appointment of guardians for [Husband and Wife], on March 16, 2022, [Appellant] filed [its] petitions for allowance of legal fees, demanding payment of legal fees in excess of $37,000.00. After consideration of the preliminary objections filed by the guardians for [Husband and Wife], and the amended petition[s] for allowance of legal fees filed by [Appellant], the court denied the petition[s] for legal fees by order[s] dated July 21, 2022.[3]

Orphans' Court Opinion ("OCO"), 4/10/23, at 1-2 (cleaned up).

On August 19, 2022, Appellant filed timely notices of appeal at docket nos. 962 and 963 WDA 2022. Appellant was not directed to file concise statements of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On March 3, 2023, the orphans' court issued a single Rule 1925(a) opinion addressing its denial of Appellant's amended petition in each of the underlying guardianship matters. In its opinion, the orphans' court suggests,

---

financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501.

[3] As the orders dated July 21, 2022, were not entered on the corresponding dockets until July 22, 2022, we refer to them herein as the "July 22, 2022 orders."

*inter alia*, that Appellant did not have standing to appeal its July 22, 2022 orders and that this Court does not have subject matter jurisdiction of these matters on appeal. **See** OCO at 3. Appellant now presents the following issues for our review:

1. Did the orphans' court err in concluding that Appellant lacks standing in the instant appeal[s] when Appellant rendered legal services in the course of the representation of [Husband and Wife]?

2. Did the orphans' court err in denying Appellant's Amended Petition[s] for Legal Fees and Costs for services rendered in the course of Appellant's representation of [Husband and Wife,] based on a subsequent adjudication of incapacity when an incapacitated person is entitled to representation and when the court should abide by an incapacitated person's wishes regarding representation to the extent possible?

3. Did the orphans' court abuse its discretion in denying Appellant's Amended Petition[s] for Legal Fees and Costs by considering and applying improper factors and inferences in its determination that the fees and costs were not necessary or reasonable when there is a right to representation?

Appellant's Brief at 4.[4]

As the orphans' court raised the question of our jurisdiction, we begin by determining whether these matters are properly before us. It is well-settled that "[t]he appealability of an order directly implicates the jurisdiction of the court asked to review the order." **See Estate of Considine v. Wachovia Bank**, 966 A.2d 1148, 1151 (Pa. Super. 2009) (citing **Mother's Restaurant Inc. v. Krystkiewicz**, 861 A.2d 327, 331 (Pa. Super. 2004)).

---

[4] Appellant filed nearly identical briefs in the appeals at 962 and 963 WDA 2022. For ease, we refer to Appellant's briefs in the singular throughout this writing.

"Accordingly, this Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." ***Id.*** (citing ***Kulp v. Hrivnak***, 765 A.2d 796, 797 (Pa. Super. 2000)). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary." ***Barak v. Karolizki***, 196 A.3d 208, 216 (Pa. Super. 2018).

"In order to avoid piecemeal litigation, no appeal will be permitted from an interlocutory order unless specifically provided for by statute. Otherwise, an appeal must be taken from a final order." ***In re Estate of Borkowski***, 794 A.2d 388, 389 (Pa. Super. 2002) (citation omitted). Pennsylvania Rule of Appellate Procedure 342 addresses appealable orphans' court orders and provides, in relevant part, as follows:

> **(a) General rule.** An appeal may be taken as of right from the following orders of the Orphans' Court Division:
>
> …
>
> (5) An order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship….

Pa.R.A.P. 342(a)(5) (emphasis in original). Thus, an orphans' court order "determining if an individual or entity is a fiduciary, beneficiary or creditor, **such as an order determining if the alleged creditor has a valid claim** against the estate[,]" is immediately appealable as of right. Pa.R.A.P. 342, *Note* (emphasis added). ***See also id.*** (explaining that "such orders include orders pertaining to trusts and guardianships as well as estates").

Instantly, the orders from which Appellant appeals essentially determined that Appellant does not have a valid claim regarding the legal fees

and costs it allegedly incurred through its representation of Husband and Wife in the guardianship proceedings. Thus, we conclude that the July 22, 2022 orders were appealable as of right, pursuant to Pa.R.A.P. 342(a)(5). Having determined that this matter is properly before us, we now delve into the merits of Appellant's claims.

In its first issue, Appellant asserts that the orphans' court erred in concluding that it lacked standing to appeal the July 22, 2022 orders, on the grounds that Appellant was not a party to the underlying actions. Appellant's Brief at 13-14. Specifically, the orphans' court opined:

> Attorney Botta and his law firm … are not parties to the underlying litigation, have no standing to seek legal fees from their client in the underlying guardianship action[s], and have no standing to appeal the court's denial of their demand for legal fees arising out of the underlying action.

OCO at 11. To the contrary, Appellant asserts that, "as a creditor of the guardianship estate[s] of [Husband and Wife,]" it has standing to appeal the orders denying its fee petitions. Appellant's Brief at 16.

Pennsylvania courts view the issue of standing as non-jurisdictional and waivable. *See In re: Condemnation of Urban Dev. Auth. of Pittsburgh*, 913 A.2d 178, 181 n.6 (Pa. 2006). *See also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Moreover, "[t]his Court has consistently held that a court is prohibited from raising the issue of standing *sua sponte*." *See In re Nomination Petition of DeYoung*, 903 A.2d 1164, 1168 (Pa. 2006). We observe, here, that neither party raised a question below regarding whether

Appellant had standing to seek recovery of its legal fees and costs in the underlying guardianship actions. Consequently, the orphans' court erred in raising and addressing the issue on its own accord, and we are constrained to deem this issue waived.

Nevertheless, even if this issue had been properly preserved below, we would conclude that the orphans' court erred in opining that Appellant does not have standing to appeal the July 22, 2022 orders. First, we are puzzled by the orphans' court's reliance on **Matter of Brown**, 507 A.2d 418 (Pa. Super. 1986), in reaching this conclusion. In **Brown**, this Court determined that Mr. Brown's former attorney-in-fact lacked standing to challenge Mr. Brown's **adjudication as an "incompetent person"**[5] under the Probate, Estates and Fiduciaries ("PEF") Code and, therefore, had no special statutory right to appeal. **Id.** at 419. The **Brown** Court explained:

> [O]nly those persons who are *sui juris* and would be entitled to share in the alleged [incapacitated person's] estate are required to be notified of impending [incapacitation] proceedings. It follows that the class of individuals entitled to challenge the adjudication should be limited to these same intestate heirs and the alleged [incapacitated person] himself.

**Id.** (citing 20 Pa.C.S. § 5511(a)). Instantly, there is no dispute that Appellant is challenging the orphans' court's denial of its amended petition for allowance of legal fees and costs — **not** the court's adjudication of Husband and Wife as incapacitated. Thus, the determination in **Brown** that counsel for an alleged

---

[5] Following the **Brown** decision, the General Assembly of this Commonwealth amended Section 5511(a) of the PEF Code, replacing the word "incompetent" with "incapacitated." **See** Act 1992, April 16, P.L. 108, No. 24, § 8.

incapacitated person does not have standing under the PEF Code to contest the adjudication of incapacity would be of no moment here.

Additionally, the **Brown** Court determined that the former attorney-in-fact's limited participation in the incompetency hearing as a witness did not confer upon her party status or otherwise establish a general right to review under Pa.R.A.P. 501. *Id.* at 420 (citing **Newberg by Newberg v. Board of Public Education**, 478 A.2d 1352, 1354 (Pa. Super. 1984) ("'Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order … may appeal therefrom.' Pa.R.A.P. 501. Accordingly, an appeal by one who was not a party to a proceeding in the trial court must be quashed.")). These facts are distinguishable from the instant matter, however, where Appellant was counsel of record for both Husband and Wife in each of their underlying guardianship proceedings, and Attorney Botta filed petitions for allowance of legal fees and costs on Appellant's behalf. Thus, we would conclude that the **Brown** decision would not be determinative as to whether Appellant has a right to appeal as an aggrieved party.

"This Court has consistently held that for purposes of Pa.R.A.P. 501, a party is 'aggrieved' when the party has been adversely affected by the decision from which the appeal is taken." **In re J.G.**, 984 A.2d 541, 546 (Pa. Super. 2009) (internal citations, brackets, and some quotation marks omitted). "The Appellate Rules do not define the term 'party.' However, the note following the definitional rule, Pa.R.A.P. 102, states that that rule is based on 42 Pa.C.S. § 102, which defines 'party' as '[a] person who commences or against whom

- 8 -

relief is sought in a matter….'" ***Newberg by Newberg***, 478 A.2d at 1354.

Section 102 of the Judicial Code further defines "matter" as an "[a]ction, proceeding or appeal[,]" and specifies that "proceeding" includes "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but the term does not include an action or an appeal." 42 Pa.C.S. § 102. Based on the foregoing, we would conclude that Appellant gained the status of a party in the underlying actions with the filing of its fee petitions, and that Appellant was aggrieved by the orphans' court's denial of its request for the allowance of said fees. Accordingly, we would deem Appellant to have standing to appeal the July 22, 2022 orders, pursuant to Pa.R.A.P. 501.

Appellant's second and third claims concern the orphans' court's finding that it was not entitled to an award of attorneys' fees and costs for its representation of Husband and Wife. We review the orphans' court's decision mindful of the following:

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Bechtel*, 92 A.3d 833, 837 (Pa. Super. 2014) (citation omitted). The allowance of counsel fees in a guardianship action is within the discretion of the lower court. *See In re Pryor's Estate*, 27 A.2d 466, 468 (Pa. Super. 1942) (citations omitted). We will not reverse the court's disallowance of fees absent an abuse of discretion. *See id.*

Following is a summary of additional, relevant facts relied on by the orphans' court in reaching its decision regarding Appellant's petitions for allowance of legal fees and costs:

> According to Appellant's brief[s] submitted to the orphans' court in support of [its] demand for legal fees, on October 13, 2021, [Husband and Wife] executed an engagement letter, dated October 1, 2021, for … legal services to be performed by Attorney Botta. Appellant allege[d] that [Husband and Wife] sought legal assistance to "prepare various estate planning documents," which included a financial power of attorney. However, the "Representation" section of the engagement letter specified that Appellant would "provide legal services in connection with the property transaction."[54]
>
> > [54] There was no averment or evidence that Attorney Botta was involved in the sale of [Husband and Wife's] real property, either their primary residence in Allegheny County or their home in Florida.
>
> The engagement letter also included a "Rates and Invoicing" section that disclosed Appellant's billing rate to be between $210 and $390 per hour. The hourly rate charged by Attorney Botta was identified as $380 per hour. Finally, the "Rates and Invoicing" section of the engagement letter explained that monthly invoices would be sent by electronic mail, with payment due on receipt of the invoice. Nonetheless, there was no evidence that monthly invoices were sent to, acknowledged by, or otherwise agreed to by [Husband and Wife,] and no copies of monthly invoices were attached or submitted by Appellant in [its] petition[s] for fees. As noted, Appellant claimed that [Husband and Wife] "vehemently opposed" the guardianship and sought [Attorney Botta's]

- 10 -

representation of their "interests in the guardianship proceedings," and claimed in [its] brief that [Attorney Botta] would be providing representation in "estate planning matters," the sale of real property, and "extensive legal services associated with the guardianship proceedings." However, [Attorney Botta] offered no contract or engagement letter that showed that his legal services for [Husband and Wife] would extend to estate planning or the guardianship proceedings.

An internal billing transaction document, marked "Exhibit D" (hereinafter "billing document"), provided by Appellant, showed billable legal services conducted for [Husband and Wife] from October 4, 2021 through March 12, 2022. All entries in the billing document were listed under a category entitled "Property Transaction." The first two entries[] dated October 4, 2021[,] and October 7, 2021, pertained to the sale of real property.[58] However, beginning at least on October 21, 2021, the subject of additional billing entries involves "estate planning matters." Moreover, the large majority of the subsequent charges billed to [Husband and Wife] were related to the guardianship proceedings and Appellant's petition[s] for allowance of legal fees. The legal services in the billing document total approximately $36,000. Attorney Botta's amended petition[s] for allowance of legal fees sought a court order compelling payment of $37,426.37 in fees and costs from the guardians.

[58] … As noted, there was no evidence that Attorney Botta or his firm were involved in the sale of [Husband and Wife's] real property, either their primary residence in Allegheny County or their home in Florida. The Florida home was sold prior to Appellant's involvement with [Husband and Wife,] and the Allegheny County residence was sold by the guardians subsequent to the adjudication of incapacity, in January of 2022.

Although [Attorney Botta] allege[d] that he had "consciously employed measures to limit and reduce accrued expenses, fees and costs where possible," because his office was "sensitive to [Husband and Wife's] limited resources and fixed income," the court finds no evidence to this claim. Examples of methods [Attorney Botta] purported to have utilized to minimize fees and costs include assigning various tasks to junior attorneys and subtracting a "sizable portion of travel and other expenses" from [Husband and Wife's] "overall bill." Nonetheless, the amounts of

- 11 -

expenses subtracted from [Husband and Wife's] bill were not specified by Appellant.

Regarding the extent of [Wife's] assets, according to the guardians' answer to Appellant's amended petition[s] for legal fees, "[Wife's] estate is limited, and her living expenses are greater than her current income." Furthermore, the remaining assets in [Wife's] estate are "intended to support [Wife] for the rest of her life." Finally, [Wife's] current income consists of monthly social security payments of $622.

On March 16, 2022, Appellant filed [its] petition[s] for allowance of legal fees and costs, notably naming [Husband and Wife] as petitioners. The guardians filed preliminary objections to the petition[s] on April 19, 2022. Appellant then filed … amended petition[s], on behalf of [it]self on April 29, 2022, requesting the court to compel the guardians to pay [its] legal fees and costs charged to [Husband and Wife]. The court learned that [Husband] passed away on July 17, 2022.

OCO at 14-17 (cleaned up; some footnotes omitted). Based on the foregoing, the orphans' court entered its July 22, 2022 orders denying Appellant's amended petitions for the allowance of legal fees and costs.

First, Appellant claims that the orphans' court erred in denying its fee petitions, because Husband and Wife — as incapacitated persons — were entitled to representation; had the right to choose their counsel; and their wishes should have been respected to the greatest extent possible. Appellant's Brief at 16-17. Appellant stresses that our courts have recognized an incapacitated person should not be denied the opportunity to express his or her voice in the courts. *Id.* at 18 (citing *In re Estate of Rosengarten*, 871 A.2d 1249, 1257 (Pa. Super. 2005)). "When an incapacitated person makes his or [her] wishes as to legal representation known, the person's chosen counsel should be permitted to provide representation." *Id.* (citing

*Rosengarten*, 871 A.2d at 1257). ***See also id.*** (citing ***In the Int. of M.A.***, 284 A.3d 1202 (Pa. Super. 2022) (reinforcing that an incapacitated person has the right to choose counsel and to have their wishes be honored)). Appellant asserts that "[t]he orphans' court improperly disregarded these rights and incorrectly applied Pennsylvania law in the course of reaching its decision." ***Id.*** at 19-20.

We deem this argument to be wholly without merit. The orphans' court's decision denying Appellant's request for legal fees and costs in no way deprived Husband and Wife of their right to be represented by Appellant — their purported chosen counsel — in their guardianship proceedings. Thus, no relief is due on this basis.

Next, Appellant claims that the orphans' court erred in denying its fee petitions on the basis that Husband and Wife's adjudication of incapacity "legally invalidated the prior fee agreement with Appellant as contained in the engagement letter." ***Id.*** at 20. Appellant asserts that "[a] contract entered into by an incapacitated person is merely presumed to be voidable, and this presumption is subject to rebuttal by proof that the person was not incapacitated." ***Id.*** (citing ***Rosengarten***, 871 A.2d at 1257). However, in support of its argument, Appellant only proffers:

> At the time when [Husband and Wife] engaged Appellant to represent [them], there was no indication to Appellant that [they were] mentally feeble or incompetent. Furthermore, at that time, no guardianship proceedings had been instituted; rather, those proceedings arose once the guardians became aware that changes revoking the prior power of attorney had been made.

- 13 -

*Id.* at 20-21.[6]

Appellant further contests the orphans' court's alternative analysis, in which it stated that the fee agreement was also invalid "as the engagement letter did not explicitly mention representation in the guardianship proceedings, but only representation described as a 'Property Transaction.'" *Id.* at 21. Appellant explains that Husband and Wife initially sought Attorney Botta's help to prevent the sale of their residence and that Attorney Botta continued to represent them throughout the guardianship proceedings. *Id.* at 21-22. Appellant insists that all proceedings in which Attorney Botta represented Husband and Wife "arose from and were inextricably linked to the scope of the initial engagement." *Id.* at 22.

Section 5524 of the PEF Code provides: "A totally incapacitated person shall be incapable of making any contract or gift or any instrument in writing." 20 Pa.C.S. § 5524. As suggested by Appellant, this provision does not mandate a conclusive determination of incapacity. *See Fulkroad v. Ofak*, 463 A.2d 1155, 1156 (Pa. Super. 1983). "Rather, it has been long held that an adjudication of incompetency merely raises a presumption subject to rebuttal by proponents of the 'instrument' in question to show that at the time

---

[6] For the reasons stated *infra*, the rebuttable presumption of incapacity is not applicable here. Nevertheless, even if we were to apply this rule, we would conclude that Appellant failed to meet its burden of rebuttal, as it has not produced any evidence to establish that Husband and Wife were, in fact, capable at the time they executed the fee agreement. Rather, Appellant merely makes the bald assertion that Husband and Wife did not appear incapacitated to Attorney Botta and points out that the guardianship proceedings had not yet been instituted.

of its execution the maker was, in fact, capable." *Id.* Generally, however, an adjudication of incapacity has prospective effect only to protect the person adjudicated incapacitated "against his own improvidence thereafter." *Myers Estate*, 150 A.2d 525, 529-30 (Pa. 1959) (citations omitted).

"Where mental competency is at issue, the real question is the condition of the person at the very time he executed the instrument or made the gift in question." *Sobel v. Sobel*, 254 A.2d 649, 651 (Pa. 1969) (citation omitted). "Ordinarily, the mental competency of a person who executes an instrument is presumed and the burden of proof is upon the person who alleges incompetency[.]" *In re Meyers*, 189 A.2d 852, 858 (Pa. 1963). Notably, however, "[t]he presentation of evidence tending to show lack of competency for a reasonable time before and after the critical time shifts the burden of proof to the person who alleges that the transaction occurred during an interval when the person was mentally competent." *Sobel*, 254 A.2d at 251 (citation omitted). Thus, as made clear by our Supreme Court:

> Contracts made with the incompetent **before his adjudication** as weak[-]minded are voidable and can be avoided only on proper showing that he was in fact incompetent at the time. *In re Feely's Estate*, … 98 A.2d 738[ (Pa. Super. 1953)]. **After the adjudication**, transactions with him are presumably invalid. *Pennsylvania Co. for Banking & Trusts v. Philadelphia Title Ins. Co.*, … 93 A.2d 687[ (Pa. 1952)].

*Der Hagopian v. Eskandarian*, 153 A.2d 897, 899 (Pa. 1959) (emphasis added).

Instantly, we observe that the instrument in question — namely, the engagement letter — was executed **prior to** Husband and Wife's incapacity

adjudication. As such, it was Sons' burden to establish that Husband and Wife were incapacitated at the time they signed the engagement letter, thereby rendering the contract unenforceable. *See id.* Significantly, the record reflects that the guardianship proceedings were initiated by Sons **less than one month after** the execution of the engagement letter. Moreover, Sons produced assessments of Husband and Wife, indicating mental deficits and cognitive decline, which were completed **months prior** to the engagement letter.

The orphans' court opined:

As testified to at the guardianship proceedings, months prior to the date of the engagement letter, [Husband and Wife] were already exhibiting signs of mental impairment. According to Dr. Degiovanni, [Husband and Wife's] treating physician for more than 30 years, [Wife's] incapacity, which included deficits in judgment and memory, as well as delusional thinking, were apparent throughout 2021, and perhaps as early as the end of 2020. As for [Husband], evaluations conducted on April 29, 2021 and May 20, 2021[,] by Dr. Degiovanni reported a decline in [Husband's] cognitive and physical health that were unlikely to improve.

OCO at 28 (footnotes omitted). The orphans' court further summarized the evidence produced by Sons at the guardianship hearing as follows:

Specifically regarding [Husband], prior to his death, his mental and physical health were deteriorating, and contributing to his decline was his development of Parkinson's disease. [Dr. Degiovanni and Dr. Thomas Scott, a neurologist,] opined that [Husband] needed assistance with processing information, financial and healthcare management, long-term and short-term memory, communicating decisions, and providing informed consent. Dr. Degiovanni observed a decline in [Husband's] cognitive and physical health that was unlikely to improve. Dr. Degiovanni's report, attached to the original guardianship

- 16 -

petition[s] as ["E]xhibit A["] and made a part of the record via her deposition testimony, noted that [Husband] looked "more unkept" and demonstrated "poor nutrition," which presented as a 25-pound weight loss within an 8-month period. Finally, Dr. Degiovanni opined that [Husband's] lack of judgment had the potential to cause financial harm to him and his wife, and that [Husband] required 24/7 assistance.

In regard to [Wife], Dr. Degiovanni reported examinations of her as recently as July 8, 2021[,] and August 9, 2021, and opined that [Wife] lacked "judgment and may cause herself harm, financially and physically." The doctor further noted that [Wife] required assistance 24 hours a day, 7 days per week. Dr. Degiovanni wrote that during the course of her evaluations, she had "seen the progression of delusional thinking" and declining memory issues in [Wife] that were unlikely to improve. Dr. Degiovanni noted that [Wife] required assistance with processing information, financial and healthcare management, long-term and short-term memory, communicating decisions, and providing informed consent. Dr. Degiovanni observed cognitive impairment in [Wife] from November 2020 to November 2021, which included errors in paying utility bills that led to an "interruption" of services, an inability to immediately recall simple medical instructions, and several bouts of delusional thinking.

*Id.* at 4-6 (footnotes omitted).

Additionally, J.A.M. testified that "while his mother had previously done a great job managing the household accounting, she was becoming confused to the extent that their household electricity, television and internet service had been turned off due to non-payment of bills." *Id.* at 6. He also recalled an incident where the Bethel Park police had found his mother at a busy intersection after she had wandered from home, and his father was very upset. *Id.* Based on the foregoing evidence, we conclude that the orphans' court reasonably found "[Husband and Wife] did not have the mental capacity to enter into a binding contract with [A]ppellant for legal services when they

signed the engagement letter on October 13, 2021." *Id.* at 27.  Consequently, we deem the fee agreement unenforceable due to Husband and Wife's lack of mental capacity.  *See* 20 Pa.C.S. § 5524; *Feely's Estate*, 98 A.2d at 741.[7]

Finally, Appellant claims that even if the engagement letter is deemed invalid due to incompetency, it is entitled to payment of its legal fees and costs under a quantum meruit basis.  Appellant's Brief at 22-23 (citing *Feely's Estate*, 98 A.2d at 742).  *See also id.* at 24 ("A quantum meruit action is a quasi-contract action, available when a contract is deemed void or unenforceable." (citing *Shafer Elec. & Const. v. Mantia*, 96 A.3d 989, 996 (Pa. 2014)).  In support of its argument, Appellant insists that it provided Husband and Wife with "legal representation of the nature that Pennsylvania courts have considered fair, reasonable and necessary and demonstrated the reasonableness of that representation by presenting accurate, professionally reviewed records."  *Id.* at 26.  *See also id.* at 25-26 (Appellant's averring that it presented "detailed, accurate, itemized billing records as evidence of all work completed").  Nonetheless, Appellant argues that the orphans' court denied its fee petitions "based on its misapplication and disregard of established Pennsylvania law."  *Id.* at 26.  Appellant has failed to convince us that any relief is due on this claim.

---

[7] Due to our disposition of this claim, we need not address Appellant's argument that the orphans' court erred in alternatively finding that "the fee agreement was invalid as the engagement letter did not explicitly mention representation in the guardianship proceedings…."  Appellant's Brief at 21.

We recognize that legal fees for the representation of an incapacitated individual **may** be awarded on a quantum meruit basis where there is no contractual basis for recovery of such fees. **See Feely's Estate**, 98 A.2d at 742; **In re Weightman's Estate**, 190 A. 552, 555 (Pa. Super. 1937). It has long been held that "[p]ersons not *sui juris* … may bind themselves for necessaries." **Lancaster County Nat. Bank v. Moore**, 1875 WL 13086, at *1 (Pa. Jan. 1, 1875). "An incompetent is liable for necessaries furnished to him **prior to the adjudication of incompetency**." **Feely's Estate**, 98 A.2d at 741-42 (citations omitted; emphasis added). "It is, of course, essential to show that the legal services rendered were reasonably necessary for the welfare of the incompetent, before a recovery therefor on the theory that they are necessaries will be allowed." **Id.** at 742. We further emphasize that legal services rendered to an incapacitated person "**from a proper motive and under circumstances indicative of good faith**, may, in the exercise of a sound discretion by an auditing judge, be considered necessaries properly chargeable in a reasonable amount to the estate of [the incapacitated] person." **Weightman's Estate**, 190 A. at 555 (emphasis added). **See also Feely's Estate**, 98 A.2d at 742 ("[C]harges against the estate of a weak-minded person must be manifestly just and moderate.") (citation omitted).

Additionally, we note that an attorney seeking compensation from an estate has the burden of establishing facts which show the reasonableness of the fees and entitlement to the compensation claimed. **See In re Estate of Rees**, 625 A.2d 1203, 1206 (Pa. Super. 1993); **In re Estate of Sonovick**,

- 19 -

541 A.2d 374, 376 (Pa. Super. 1988). Guidelines for making a determination of appropriate attorney fees in the absence of a contract have been set forth by the Pennsylvania Supreme Court in ***In re LaRocca's Trust Estate***, 246 A.2d 337 (Pa. 1968):

> The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

***Id.*** at 339. "The reasonableness of the fee is a matter for the sound discretion of the lower court and will be changed by an appellate court only when there is a clear abuse of discretion." ***Id.***

Instantly, Appellant contends that it initially rendered its services to Husband and Wife for the purpose of protecting their interest in real property and that it continued to represent them throughout the subsequently initiated guardianship proceedings. Appellant's Brief at 27-28. Appellant avers:

> [Its] representation in th[ese] matter[s] required extensive correspondence, strategizing, and the preparation of numerous legal documents. It was also necessary for Appellant to travel to meet with and communicate with [Husband and Wife], as they were senior citizens with limited mobility. Furthermore, the nature of the guardianship proceedings necessitated Appellant's defense of depositions, research, witness preparation, briefing, and multiple appearances before the [o]rphans' [c]ourt to support the positions advanced by Appellant and contradict the [g]uardians' assertions.

*Id.* at 28-29. *See also id.* at 29 (stating that "extensive legal services" were required to ensure that Husband and Wife's interests were represented in the guardianship proceedings).[8]

Appellant baldly asserts that the orphans' court "disregarded substantial, significant evidence which was presented in support of the reasonableness and necessity of Appellant's representation[,]" and that it focused instead "on facts which were improper to consider when ruling on Appellant's fee petition[s]." *Id.* at 33. We observe, however, that Appellant fails to state specifically what evidence the orphans' court disregarded, nor does it point us to such evidence in the record. We will not develop arguments on behalf of Appellant. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant."). Moreover, as to its assertion that the orphans' court focused on "improper" facts in denying its fee petitions, Appellant does not cite to any legal authority or provide any legal analysis of its claim. *See id.* at 1089 ("Mere issue spotting without analysis to support an assertion precludes our appellate review of a matter.") (internal brackets and citations omitted). Thus, we deem this issue waived.

Even if this argument had not been waived, we would not overturn the orphans' court's decision on this basis. The orphans' court did not find

---

[8] Appellant fails to explain how or why the legal services required in these matters were so "extensive" as to justify legal fees and costs in excess of $37,000.

Appellants' legal fees to be "necessary" or reasonable, so as to justify relief on a quantum meruit basis. *See* OCO at 20. *See also id.* at 22 ("[T]he fees and costs charged by Attorney Botta cannot be deemed 'necessaries' or reasonable."). In support of its conclusion, the orphans' court noted:

> [It] conducted hearings for two days to consider the evidence presented. Only after weighing all the evidence did the court adjudicate [Husband and Wife] as incapacitated persons, finding that [Wife] suffers from dementia and [Husband] suffered from Parkison's disease and dementia prior to his death. … [A]ppellant offered no evidence to refute the medical evidence of their incapacity, and did not have [Husband and Wife] testify. No appeal was taken from [Husband and Wife's] adjudication of incapacity.

*Id.* at 21.

Additionally, it stated, "there is no evidence that Attorney Botta independently evaluated [Husband and Wife] or recommended an assessment of their capacity to enter into a contract, or their ability to evaluate information effectively and make appropriate decisions. In fact, he offered no expert testimony or evaluation during the guardianship hearings." *Id.* at 23. *See also id.* at 25 ("There was no evidence to support Attorney Botta's claim … that [Husband and Wife] were 'vehemently opposed' to the guardianship and would testify to that."). From Appellant's failure to call Husband and Wife as witnesses, the orphans' court further explained that it was within its discretion, as fact finder, to infer that "Attorney Botta was well aware that [Husband and Wife's] testimony would only support the findings of incapacity in accordance with their physician's expert testimony, and that their testimony

would not support [A]ppellant's challenge to the guardianship." *Id.* at 26.[9]

"[Attorney Botta's] failure to present witnesses as to [Husband and Wife's] capacity and his cavalier attitude in assessing that capacity were a cause for the court's concern." *Id.* at 25 (internal quotation marks omitted).

Finally, the orphans' court found that Appellant failed to meet its burden to prove that it was entitled to compensation and noted that,

> rather than filing a claim against [Wife's] guardianship estate, or [Husband's] decedent estate, Appellant simply petitioned the orphans' court to compel the payment of [its] attorney[s'] fees. As set forth in … *Rosengarten*, *supra*, and *Weightman's Estate*, *supra*, the determination of "appropriate attorney fees," absent an enforceable contract, is within the discretion of the orphans' court. In consideration of the guardianship proceedings and all of the evidence presented, and the lack of evidence offered on behalf of [Husband and Wife] by Appellant, the orphans' court appropriately exercised its discretion to deny Appellant's petition[s] for allowance of attorneys' fees. The legal fees Appellant charged **up to and including the incapacity hearing and the adjudication of incapacity** were not necessary or compensable.[10]

---

[9] As noted by the orphans' court, "[t]he general rule in Pennsylvania is that '[i]f a party fails to call a witness or other evidence within his or her control, the fact finder may be permitted to draw an adverse inference.'" OCO at 25 (quoting *Oxford Presbyterian Church v. Well-McClain Co., Inc.*, 815 A.2d 1094, 1102 (Pa. Super. 2003) (internal citations omitted; some brackets in original)). "Generally, when a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable." *Id.* (quoting *Oxford Presbyterian Church*, 815 A.2d at 1103 (internal citations omitted)).

[10] *See Feely's Estate*, 98 A.2d at 741-42 (recognizing that an incapacitated person is liable for necessaries furnished to him **prior to** the adjudication of

*(Footnote Continued Next Page)*

OCO at 26 (cleaned up; emphasis added). The court emphasized its finding that the compensation sought by Appellant was "not reasonable or just, and not necessary." ***Id.*** at 27. ***See also id.*** ("At the time Attorney Botta became involved with [Husband and Wife], they already had a valid [POA] given to … [S]ons, who were appropriately managing their affairs."); ***id.*** at 29 (the court's noting Appellant's failure to present any evidence to support its contention that it "utilized certain methods to reduce [Husband and Wife's] overall bill," given their "limited resources"). Based on the foregoing, we would conclude that the orphans' court properly considered the factors as set forth in ***LaRocca's Trust Estate***, ***supra***, and acted within its discretion to deny Appellant's request for compensation on a quantum meruit basis.

Accordingly, we affirm the July 22, 2022 orders denying Appellant's petitions for allowance of legal fees and costs.

Orders affirmed.

---

incapacity). Appellant's argument is devoid of any legal authority to support a quantum meruit claim for legal fees incurred **after** Husband and Wife were adjudicated incapacitated. **See** OCO at 15 (observing that "the large majority of … charges billed to [Husband and Wife] were related to the guardianship proceedings **and [A]ppellant's petition[s] for allowance of legal fees**") (emphasis added).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/11/2024