J-A16026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| IN RE: THAT PORTION OF THE WARD FAMILY TRUST, FOR THE BENEFIT OF MICHAEL EDWARD WARD AND HIS FAMILY | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>:<br>:<br>: |
| APPEAL OF: MICHAEL WARD | :<br>:<br>: No. 1241 WDA 2023 |

Appeal from the Order Entered September 18, 2023
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
No. 2021 OC 214

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: July 30, 2024**

Michael Ward (Appellant), individual trustee of the Michael Edward Ward

Family Trust (Michael Ward Trust), appeals from the order denying, without

prejudice, his petition (Section 7763 petition) filed pursuant to Section

7763(a.1) of the Uniform Trust Act (UTA), 20 Pa.C.S.A. § 7763(a.1).[1]  The

_____

[1] Section 7763(a.1) provides:

> **(a.1) _When no majority._ —** When a dispute arises among
> trustees as to the exercise or nonexercise of any of their powers
> and there is no agreement by a majority of them, unless otherwise
> provided by the trust instrument, the court in its discretion, upon
> petition filed by any of the trustees or any party in interest, aided
> if necessary by the report of a master, may direct the exercise or
> nonexercise of the power as it deems necessary for the best
> interest of the trust.

20 Pa.C.S.A. § 7763(a.1); **_see also In re Jackson_**, 174 A.3d 14, 27 (Pa.
Super. 2017) ("Where trustees possessing equal power deadlock, the UTA
_(Footnote Continued Next Page)_

Section 7763 petition sought permission for Appellant to proceed as sole trustee of the Michael Ward Trust, for the purpose of filing a partition action, without the consent or joinder of the corporate trustee of the Michael Ward Trust, First National Trust Company (First National). Appellant seeks the partition of Horseshoe Spring Farm (the Farm), a 115-acre parcel of improved real property, located in Frankstown Township, Blair County, Pennsylvania. The Michael Ward Trust holds a one-third interest in the Farm. After careful review, we affirm.

The orphans' court thoroughly detailed the factual background in its opinion:

> In 1941 and 1949, William W. Ward [(William)] and Dorothy Ward [(Dorothy) (collectively, "the Wards" or "Settlors")] purchased … [the Farm].[2] Th[e Farm] was titled in the name of a Pennsylvania corporation[,] Horseshoe Spring Farm Corp[oration (the corporation)]. Will[ia]m … was President [of the corporation]. In 1950, the corporation transferred the … [Farm] to [the Wards]. The Wards had three sons [(collectively, the sons)]: George William Ward [(George)], James Richard Ward [(Richard),] and [Appellant]. In 1961, William and Dorothy established the Ward Family Trust [(the Original Trust),] by means of a trust agreement. The Ward Family Trust Agreement[, dated September 1, 1961 (Original Trust Agreement),] directs the net proceeds of the [Original] Trust would be allocated *per stirpes* to the [] sons[,] and on their deaths[,] to their issue and/or surviving spouses. Paragraph Fourth of the [Original] Trust Agreement provided the [Original] Trust would terminate upon the expiration of twenty-one (21) years after the death of the last survivor of all

_____

permits any of them to petition for a judicial resolution of the deadlock" under Section 7763).

[2] The Wards resided at the Farm during their lifetimes, and hosted numerous family gatherings there over the years. *See*, *e.g.*, N.T., 6/20/23, at 96.

of Settlor[s'] issue living on September 15, 1961. Upon termination, the principal of the [Original] Trust [was to] be distributed, *per stirpes*, to those of the Settlor[s'] issue then living, subject to certain adjustments. William … died [on] March 10, 1969, and Dorothy [] died [on] September 7, 1975. By the terms of [Dorothy's] Will, she left the residue of her estate to the … [Original] Trust[. T]his would have included [Dorothy's] interest in the [Farm].

When created in 1961, the [Original] Trust Agreement named the [Wards'] two oldest sons[,] George … and [] Richard …[,] as trustees[,] along with a corporate trustee. By the terms of the [Original] Trust Agreement, [Appellant] would become a trustee if he filed an election to do so on attaining his majority.[3]

In 1988, the co-trustees, consisting of the [] sons and the corporate Trustee[ (collectively, the petitioners),] petitioned the Blair County Common Pleas Court seeking approval of a division of the … [Original] Trust into three separate trusts. [The petitioners proposed that t]here would be a separate trust for each son and his family. … [Under the proposal, e]ach son [would respectively] serve[] as [individual] trustee for the trust that benefitted him[,] along with a corporate trustee.

The petitioners' request was granted by the Blair County Common Pleas Orphans' Court Division [in a Final Order dated] December 6, 1988 [(the 1988 Order).][4] The [1988] Order provided the net income of the [Original] Trust would be paid[,] in the sole discretion of the corporate trustee, to all or any of the sons of Settlors for whose family it is held, that son's spouse, that son's issue and their spouses. The 1988 Order did not change the termination event, and further provided that **if at the [time of the] termination event[,] any of the [] sons have no living issue, the principal of the separate trust held for such son**

_____

[3] Appellant filed an election upon reaching majority.

[4] The 1988 Order equally divided the Original Trust and created a sub-trust for each of the sons: The Michael Ward Trust; the George William Ward Family Trust (George Ward Trust); and the J. Richard Ward Family Trust (Richard Ward Trust). We collectively hereinafter refer to the Richard Ward Trust and the George Ward Trust as the "other sub-trusts."

**without living issue would be distributed *per stirpes* to Settlors' then living issue**.[5]

**The 1988 … Order did not directly reference the …** [**Farm**].

In 2012, a quit claim deed [for the Farm] was recorded in the Blair County Recorder of Deeds. This deed was from the co-executors of the Estate of Dorothy …[,] as grantors to the co-trustees of the … [Original] Trust. **Each** [**of the sons'**] **sub-trust**[**s, including the Michael Ward Trust,**] **received an undivided one-third interest of the** [**Farm,**] **to be held as tenants in common**.

Also, in November 2016, the [Original] Trust acquired 1.3166 acres of land from Ralph T. Bladgett and Carolyn B. Bladgett, his wife. The [sons' respective] sub-trusts each acquired an undivided one-third interest [in the Bladgett property] as tenants in common.

In 2014, pursuant to a nonjudicial settlement agreement, the George Ward [] Trust was divided into five (5) separate and equal trusts[,] for the benefit of George['s] … five children [(collectively, George's Children)].[6] Each child of the Geoge [] Ward [Trust] serves as individual trustee of his or her respective trust.

**First National … serves as corporate trustee** [**of the George Ward Trust**]**. First National … also serves as corporate trustee for the Michael** [] **Ward** []**Trust**. The Bryn Mawr Trust Company [(BMTC)] currently serves as corporate co-trustee of the [] Richard Ward [] Trust.

---

[5] Accordingly, pursuant to the terms of the 1988 Order, **the beneficiaries of the other sub-trusts are remainder beneficiaries of the Michael Ward Trust**. Order 12/6/88, ¶ B; *see also*, *e.g.*, Appellant's Reply Brief at 8 (conceding the status of the beneficiaries of the other sub-trusts as "remainder beneficiaries" of the Michael Ward Trust); N.T., 6/16/23, at 76 (Appellant conceding same).

[6] George's Children are David K. Ward, William T. Ward, Peter A. Ward, Sarah Ward Arosell, and Timothy A. Ward. George's Children have filed an appellate brief opposing Appellant's position.

Orphans' Court Opinion, 9/18/23, at 1-3 (footnotes, emphasis, and some

paragraph breaks added; capitalization modified).

The orphans' court described the "present financial status of the Michael

[] Ward Trust" as follows:

> Financial documents presented by … [Appellant] show[] that in 2022[,] the [Michael Ward] Trust had a value of $7,687,705.00. … In 2021, the value [of the Michael Ward Trust] was $8,453,599.73. For 2020, the value was $7,436,829.00 and for 2019, the value was $7,445,490.87. The earlier data provided was for 2018[,] which showed a value of $6,433,651.75.
>
> Distribution of payments from the [Michael Ward] Trust are currently made to [Appellant's] two [adult] daughters. Between 2017 and 2020, the [Michael Ward] Trust distributed annually an average of $224,000.00 in income and $132,000.00 in principal to the beneficiaries.
>
> [Appellant] concedes the [Michael Ward Trust] payments have been sufficient to meet the maintenance and support needs of his family, but argues that if in the future the family's needs increase, the Trust distributions may not be sufficient.
>
> The [Michael Ward] Trust value includes a one-third value of the Farm[, consisting] of approximately $1,030,000.00. The parties are not in agreement as to the value of … [the] Farm.

*Id.* at 3 (citation to exhibit omitted; some capitalization modified; paragraph

breaks added).

With respect to the value of the Farm, the orphans' court stated:

> A number of appraisals have been done over the years[. These appraisals were] entered into evidence [at a hearing (partition hearing) that the orphans' court held on June 16 and 20, 2023, with respect to Appellant's Section 7763 petition]. … [D]uring the time these appraisals were conducted, there were no significant additions to the [Farm,] and no transfers.

In 2016, the [Farm] was appraised by Richard Johnston [(Mr. Johnston)], a certified real estate broker working for Howard Hannah…. The value was established [by Mr. Johnson to be] $2,300,000.00. [Mr. Johnston's appraisal stated that the large Farm contained multiple houses and other buildings. The Farm included, *inter alia*, three homes; a bungalow; a barn with a silo; multiple sheds; a pool and bath house; and a milk house.] … The [Farm] was noted to have one septic tank for the entire property. All the houses were described to be in good condition.

In 2019, the [Farm] was appraised twice, once by Four Seasons Appraisal, Micah Rothrauff [(Mr. Rothrauff)], certified real estate broker, and on[c]e by [Mr.] Johnston, [the] real estate broker from Howard Hannah…. The Four Seasons appraisal [valued the Farm] at $2,250,000.00. The Howard [Hannah] [] appraisal was $2,500,000.00. The Four Season[s] appraisal makes no reference to the structures['] condition[s. Whereas], the Howard Hannah [] appraisal describes the condition of the main structures as good.

Finally, in 2022[,] the [Farm] was again appraised by [Mr.] Johnston…. This appraisal set the value at $3,040,000.00. Again, [Mr. Johnston] described the condition of the main structures as good, noting that the large [] raised ranch house … had been remodeled. [Mr. Johnston] also noted that municipal water and sewer are available within one-half mile of the [Farm]. Mr. Johnston testified at the [partition] hearing and admitted he was unaware that the septic system had failed and had to be pumped twice a year.

Mr. Johnston testified there had been a substantial increase in the value of land where the Farm is located. Mr. Johnston's opinion was that the value of the land would continue to rise. The witness described the [Farm] as "real marketable," and that the unimproved land is valued for development.

Mr. Johnston is an experienced broker and has testified as an expert [in civil court proceedings] … on several occasions. Further, the 2019 appraisal[s, respectively completed] by Mr. Johnston and Mr. Rothrauff[,] were quite close, serving as a check on Mr. Johnston's work. The [orphans'] court found [Mr. Johnston's] testimony credible and persuasive and accepts his 2022 appraisal to establish the value of the [Farm].

Thus, the record supports a finding [that] the Michael [] Ward []Trust has increased in value over the years, showing significant growth. The Michael [] Ward []Trust has paid substantial contributions to the beneficiaries. Further, the Farm has risen in value over time.

*Id.* at 3-5 (capitalization modified; some paragraph breaks added).

Appellant filed his Section 7763 petition on June 17, 2021. Appellant claimed the Farm was a "non-income producing" liability to the Michael Ward Trust, and sought permission to file a partition action, without the consent or joinder of co-trustee First National. Petition, 6/17/21, ¶¶ 9, 12.[7] By order dated June 21, 2021, the orphans' court, *inter alia*, directed (1) First National to show cause why Appellant was not entitled to relief on his Section 7763 petition; and (2) Appellant to notify all interested parties of the Section 7763 petition.[8] Order, 6/21/21.

First National filed an answer and new matter to Appellant's Section 7763 petition on July 12, 2021.[9] First National claimed partition of the Farm

---

[7] Appellant filed amended Section 7763 petitions on August 13, 2021, and April 12, 2022 (collectively, amended Section 7763 petitions).

[8] Appellant objected to the orphans' court's notice requirement. The court again directed Appellant to give notice of the Section 7763 petition "to all other beneficiaries and trustees of the [Original] Trust." Order, 2/3/22, ¶ 1. Appellant subsequently complied.

[9] First National subsequently filed an answer and new matter to Appellant's amended Section 7763 petitions on May 5, 2022. On June 6, 2022, George's Children filed a response opposing the amended Section 7763 petitions. One week later, the Richard Ward Trust filed a response opposing the amended Section 7763 petitions.

was not in the best interest of the Michael Ward Trust. ***See*** Answer and New Matter, 7/12/21, ¶¶ 24-34 (asserting the Farm is a "unique inception asset" of the Original Trust); ***id.*** ¶¶ 35-39 (asserting partition and divestiture of the Farm is unnecessary to meet the financial needs of the beneficiaries of the Michael Ward Trust);[10] and ***id.*** ¶¶ 46-49 (asserting partition is "imprudent," where the beneficiaries of the other sub-trusts (1) opposed partition (and each executed an affidavit announcing their opposition); and (2) are remainder beneficiaries of the Michael Ward Trust).

First National additionally represented that the Farm, "[i]n recent years, … has generated income roughly equivalent to its maintenance, management, and upkeep expenses, thereby functioning essentially as a revenue[-]neutral asset." ***Id.*** ¶ 23; ***see also id.*** ¶ 20 ("Since the transfer of the … Farm to the [Original] Trust, the … Farm has been primarily managed by the individual co-trustees of the [Original] Trust." (capitalization modified)). Finally, First National claimed Appellant had an impermissible conflict of interest, where his proposed partition action,

> while potentially beneficial to [Appellant] in the short term as an income beneficiary of the Michael Ward [] Trust, is adverse to the interests of the remainder beneficiaries of the Michael Ward [] Trust.

---

[10] According to First National, the "value of the Michael Ward [] Trust's interest in the … Farm accounts for approximately ten percent [] of the total value of the Michael Ward [] Trust." Answer and New Matter, 7/12/21, ¶ 29. Appellant counters on appeal, "[a]s of 2022, the value of the Farm[,] as [a] percentage of [the Michael Ward] Trust, is approximately 12%." Appellant's Brief at 17.

- 8 -

***Id.*** ¶ 55; ***see also id.*** ¶¶ 50-58.

Following proceedings not relevant to this appeal, the matter proceeded

to the partition hearing on June 16 and 20, 2023. Several witnesses testified,

including Appellant, Mr. Johnston, George, some of George's Children, and

First National employee Mattew Lordich. The orphans' court summarized the

relevant testimony at the partition hearing, as it pertained to whether

continued part-ownership of the Farm is in the best interest of the Michael

Ward Trust:

> William T. Ward [(William T.)], grandson of William … and son of George …[,] is Chief Executive Officer [(CEO)] of Ward Transport and Logistics [(Ward Trucking)]…. [] William T. [] owns 91% of stock in Ward … [Trucking,] and is a 1/15 beneficiary in the George [] Ward [] Trust. Ward Trucking … currently operates in eight (8) states and has 1,500 employees. [] William T. … [testified that] his grandfather[, William,] started [Ward Trucking] in 1931 with a single truck. [William T.] testified that since his grandfather purchased [the] Farm, Ward Trucking supported operations at the Farm. [Ward Trucking] would provide labor to assist in maintenance and upkeep.
>
> [Appellant] also testified[] to this point, stating a Ward Trucking employee, Steve Weyandt [(Weyandt)], was Farm manager from 2010 to 2020. The Farm was not responsible for this employee's cost. Maintenance on the road that runs through the Farm was handled by [Weyandt]. William T. [] also stated that [Appellant previously] did a lot of work on the Farm. William T. [] concede[d at the partition hearing that] without a Ward Trucking[-]subsidized employee, the Farm cannot operate on [] a break-even basis.
>
> Currently[,] there is a Ward Trucking employee working at the Farm[, who allocates two-thirds] of his work week supporting the Farm and [one-third] of his week at Ward Trucking. This worker earns $50,000.00 annually. William T.['s son,] Adam Ward [(Adam),] is presently Farm manager.

Further, Ward Trucking … signed a lease in May of 2022 to lease one of the houses on the Farm for one year[,] at a rental rate of $1,100.00 per month.  [] Adam [] signed a lease in 2021 to rent [a different] one of the properties on the Farm[,] at a rate of $1,359.00 a month.  Adam [] received a rent abatement of $7,475.00 based on his work renovating the Farm properties.

For 2022 and 2023, the Farm account has maintained a positive balance, ending 2022 with a $6,000.00 balance[.  Year] 2023 [is] on track to … [show a profit of] $10,000.00 to $15,000.00.  Of course, … there ha[ve] been losses in the past. Between 2012 to 2021, the Farm had revenues of $543,340.00 but total expenses of $544,511.67[,] showing a loss of $1,170.87. However, if you take the years 2017 through 2021, the Farm earned total revenue of $285,074.86 but had expenses of $302,310.32[,] for a loss of $17,236.06.

The arrangement among the [Michael Ward Trust and the other sub-]trusts is whatever expenses exceed the ability of the Farm account to pay must come from the [sons' respective] trusts. In 2017, the [sons'] trusts were called upon to pay $5,000.00 each to cover Farm costs.  However, even [Appellant] agrees this did not amount to a significant impact on the [Michael Ward] Trust.

* * *

David Ward [(David)], also a son of George …, testified [at the partition hearing].  David [] served for 16 years as CEO of Ward Trucking ….  David [] indicated the family is considering several projects to increase [Farm] revenue.

[Appellant testified at the partition hearing that] during his time on the Farm[, he boarded] horses for his daughters.  A[] … stable was constructed for that purpose.  Boarding horses could generate significant revenue for the [Farm].  Also being considered is to develop the [Farm] as a wedding venue.

Based on all the above testimony, it appears the Farm accounts are currently in a positive balance and steps are being taken by experienced business people to expand Farm revenue and perform essential repairs to the property.  At present, none of their improvements have required contributions from the [Michael Ward] Trust.  Currently, … [the] Farm does not pose a

- 10 -

threat to the sustainability of the [Michael Ward] trust[] or impose[] a burden on [it].

Orphans' Court Opinion, 9/18/23, at 5-7 (some paragraph breaks added; capitalization modified).

On September 18, 2023, the orphans' court denied Appellant's Section 7763 petition, without prejudice. Appellant timely filed a notice of appeal. On November 15, 2023, the orphans' court directed Appellant to file a concise statement of errors complained of on appeal within 21 days, pursuant to Pa.R.A.P. 1925(b) (Rule 1925(b) order). However, the orphans' court never served Appellant with its Rule 1925(b) order.[11]

Appellant presents eight issues for review:

A. Do the beneficiaries of the other [sub-]trusts[,] which own the Farm as tenants in common[,] have standing to participate in the underlying action brought under 20 Pa.C.S.A. [§] 7763[,] which is a dispute between co-trustees about filing a partition action?

B. Are the beneficiaries of the George [] Ward Trust and the Richard Ward Trust vested beneficiaries?

C. Did the [orphans'] court decide the best interest of the [Michael Ward] Trust by not allowing the Trustees to file a partition action for a non-income producing asset?

---

[11] Based on Appellant's failure to file a Rule 1925(b) concise statement, this Court issued a Rule (Rule) upon Appellant on January 10, 2024. The Rule required Appellant to show cause why we should not dismiss the appeal, where he filed no Rule 1925(b) statement. Appellant responded to the Rule, pointing out the orphans' court's failure to serve him with the Rule 1925(b) order. Response, 1/17/24, at 1. This Court subsequently discharged the Rule and referred the matter to the merits panel.

D. Does the corporate Trustee[, First National,] have a conflict of interest in representing the beneficiaries of the Michael Ward Trust and the George [] Ward Trust?

E. Is [First National] breaching [its] duty of impartiality by putting the interests and wishes of the contingent remainder beneficiaries [of the Michael Ward Trust] ahead of the current beneficiaries?

F. [Whether t]he [orphans'] court erred in allowing evidence about the partition action into the dispute between the co-trustees?

G. [Whether the orphans'] court erred in not allowing a tenant in common to file a partition action to realize the value of the property[?]

H. [Whether the orphans'] court erred in providing that if circumstances change[,] a partition action could be filed in the future with respect to … [the] Farm[,] when the circumstances are unlikely to change because of the financial support of Ward Trucking Company financially supporting the Farm[?]

Appellant's Brief at vi-vii (issues reordered; some capitalization modified).

We apply the following standard of review:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

When the [orphans'] court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court

- 12 -

that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.

We are not constrained to give the same level of deference to the orphans' court's resulting legal conclusions as we are to its credibility determinations. We will reverse any decree based on palpably wrong or clearly inapplicable rules of law. Moreover, we are not bound by the chancellor's findings of fact if there has been an abuse of discretion, a capricious disregard of evidence, or a lack of evidentiary support on the record. If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Jackson*, 174 A.3d at 23-24 (citation omitted; some capitalization modified).

In his first issue, Appellant claims the orphans' court erred in concluding the beneficiaries of the other sub-trusts have legal standing in this action. *See* Appellant's Brief at 7-10. Appellant argues that although the orphans' court required Appellant to give notice of the Section 7763 petition to all interested parties (including the beneficiaries of the other sub-trusts), "[r]eceiving notice does not make one a party." *Id.* at 8. According to Appellant, for the beneficiaries of the other sub-trusts to have standing in this

action, they "would have needed to intervene to show they had an interest that was not being protected"; however, they never intervened. *Id.*

Appellant further claims the beneficiaries of the other sub-trusts "are not adversely affected in the dispute between [the] co-trustees" of the Michael Ward Trust. *Id.* at 10; *see also id.* at 9 ("If a partition action is filed [regarding the Farm], then the … [beneficiaries of the other sub-trusts] will have standing in the partition action because they will be aggrieved. The request to file a partition action does not make them aggrieved."). Finally, Appellant argues, "[t]he beneficiaries of the other [sub-]trusts do not obtain standing because [First National] does not agree with [Appellant]." *Id.* at 10.

First National counters the orphans' court correctly ruled that the beneficiaries of the other sub-trusts have standing in this action. *See* First National Brief at 22-26.[12] According to First National, these beneficiaries "have a substantial, direct, and immediate interest in the underlying dispute. **This interest is derived most directly from their status as remainder beneficiaries of the Michael Ward Trust**." *Id.* at 22 (emphasis added). *See also* Order 12/6/88, ¶ B. First National relies on *In re Estate of Feinstein*, 527 A.2d 1034 (Pa. Super. 1987), wherein we stated: "Subject to the specific language of the trust instrument, a trustee under Pennsylvania

---

[12] BMTC and the current individual trustee of the Richard Ward Trust, Jeffrey C. Ward, have filed a single-page appellate brief, announcing their intention to "join in the [b]rief filed by First National…." Joinder Brief at 1.

law must exercise discretion in preserving the balance of interests between successive beneficiaries." *Id.* at 1037 (citations omitted); First National Brief at 23. According to First National, the "beneficiaries of the [other sub-t]rusts also have standing in this matter by virtue of the[ir] … ownership interests in the Farm." *Id.* at 24.

George's Children likewise support the orphans' court's ruling on standing, claiming "the beneficiaries of the [other sub-trusts] … have an unassailable interest in the Michael [] Ward Trust." George's Children's Brief at 4. George's Children emphasize the 1988 Order "explicitly provides that if [Appellant] and all of his issue die prior to termination of the [Michael Ward T]rust …, [First National] may distribute the income and principal from said trust to all or any" of the remainder beneficiaries of the other sub-trusts. *Id.*

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***Rellick-Smith v. Rellick***, 147 A.3d 897, 901 (Pa. Super. 2016) (citation omitted).

> In Pennsylvania, the doctrine of standing is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. For standing to exist, the underlying controversy must be real and concrete…. The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" thereby and has no standing to obtain a judicial resolution to his challenge. **A party is aggrieved for purposes of establishing standing when the party has a substantial, direct and immediate interest in the outcome of litigation**. A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal

- 15 -

connection with the alleged harm is neither remote nor speculative.

*Rellick-Smith*, 147 A.3d at 901 (emphasis added; internal citation, brackets and ellipses omitted) (quoting *Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014)).

Here, the orphans' court opined it correctly ruled the beneficiaries of the other sub-trusts have standing in this action:

> [**T**]**he beneficiaries of the** [**other sub-trusts**] **all have an interest in** … [**the**] **Farm by virtue of the** [**Original**] **Trust**. Those interests as beneficiaries are clearly separate from those of general citizens. Further, each of the [sons' respective] sub-trusts hold[s] an undivided 1/3 interest in the Farm. By virtue of those holdings, each of the beneficiaries have access to and full enjoyment of the [Farm]. A partition of the [Farm] would have an immediate effect on the beneficiaries. If the other [] sub-trusts purchase the interest of the Michael [] Ward Trust [in the Farm], each of the other sub-trusts will have $500,000.00 less in investments that pay income. If [the sons] agree to [the] sale of the entire [Farm], they each would receive 1/3 of the proceeds. But the costs of sale will ensure each trust receives less than one million dollars. It appears **the beneficiaries of** [**the other sub-trusts**] **have an immediate, substantial and direct interest on any decision to partition the** [**Farm**]. **The beneficiaries of the** [**other sub-trusts**] **will suffer a discernible adverse effect by the filing of a partition action.** The [orphans'] court therefore finds the beneficiaries of the [other sub-trusts] … have standing to challenge [Appellant's] request to allow the individual trustee of the Michael [] Ward [Trust] to proceed in an action of partition of the … Farm.

Orphans' Court Opinion, 9/18/23, at 9 (emphasis added; some capitalization and formatting modified). We agree.

The orphans' court's reasoning is supported by the record and the law. The court did not err in concluding that the beneficiaries of the other sub-trusts have standing in this action. Appellant's first issue merits no relief.

In his second issue, Appellant claims the orphans' court erred in determining that the beneficiaries of the other sub-trusts are "vested beneficiaries [under the Michael Ward Trust, which] entitled them to participate in the [Section] 7763 action." Appellant's Brief at 10. Appellant argues these beneficiaries are contingent beneficiaries, as they will receive an interest in the Michael Ward Trust "only upon the contingency that [Appellant] does not have any surviving issue." *Id.* at 11.

First National counters the orphans' court properly determined that the beneficiaries of the other sub-trusts are vested remainder beneficiaries under the Michael Ward Trust. First National Brief at 19. According to First National, Appellant

> has only two living descendants [(*i.e.*, Appellant's two daughters)], each of whom is in her fifties. Given the unlikelihood that [Appellant's daughters] will produce issue, it is all but guaranteed that [Appellant's] family line will die out prior to the termination date set for the Michael Ward Trust and that accordingly[,] the ultimate takers of the Michael Ward Trust will be the then living descendants of George and Richard.

*Id.* (internal citation omitted). George's Children agree with First National. George's Children's Brief at 4 (pointing out the 1988 Order "explicitly provides that if [Appellant] and all of his issue die prior to termination of the [Michael

Ward T]rust …, [First National] may distribute the income and principal from said trust to all or any" of the beneficiaries of the other sub-trusts).

In its opinion, the orphans' court concluded that the beneficiaries of the other sub-trusts are vested beneficiaries, competently reasoning as follows:

> [A]t a hearing on February 3, 2022, this court directed [Appellant] to serve notice [of his Section 7763 petition] on all the beneficiaries and trustees of the [Original] Trust. Under the terms of the sub-trusts established under the 1988 … Order [(including the Michael Ward Trust)], **the share of a son** [**of Settlors**]**, who die**[**s**] **prior to the termination event, and where** [**his**] **issue die before the termination event, shall be divided and** *allocated to the other* [*sub-*]*trusts*[. S]ince the beneficiaries of the other [] sub-trusts would not be entitled to receive a share of the Michael [] Ward Trust until the death of [Appellant] and his issue, the beneficiaries of the other [] sub-trusts have been described by the parties … as contingent beneficiaries. However, a review of [legal authority] does not seem to support this view. It has long been held by the Courts of this Commonwealth, that **a future interest may be vested even if a condition precedent must occur before the actual passing of the property**. *McGinley v. McGinley*, 565 A.2d 1220[, 1224] (Pa. Super[.] 1989) [("If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate." (citation and emphasis omitted))].
>
>> It is a well-settled rule, repeated in numerous cases, that the tests in determining if an interest is vested or contingent, is (*sic*) not the certainty or uncertainty of obtaining actual possession, nor the defeasibility or indefeasibility of the right of possession inasmuch as estates may be vested in interest though without present right of possession. **So long as a present right exists to a future possession, the estate is vested, even though actual possession may be defeated by a future event.**
>
> *Overbrook Heights Building & Loan Association v. Wilson*, 5[] A.2d 529 (Pa. 1939) [(emphasis added).]

- 18 -

All of the other issue in [the Original] Trust might die before [Appellant] and his daughters[. Thus], the issue of the other [] sub-trusts are best described as being vested subject to divestment. *In re Taylor's Estate*, 121 A.2d 119 (Pa. 1956). Further, the class of issue may expand[,] so it can also be said the issue of the other [] sub-trusts are vested subject to open. The time the other issue will receive the proceeds of the Michael [] Ward [T]rust is uncertain[,] and the shares received is also uncertain. *In re Newlin Estate*, 80 A.2d 819 (Pa. 1951).

The terms of the [Original] Trust [Agreement are] clear. **The [Original] Trust Agreement and the 1988 Order appear … to be well drafted and exhaustive, and these documents account for almost any conceivable situation. Given the care taken, the [orphans'] court finds the Settlors intended their gifts to be vested**. *In re Estate of Benson*, 285 A.2d 101 (Pa. 1971). As either a contingent or vested beneficiary, the members of the sub[-]trust would ordinarily have standing to maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress against a breach of trust. *In re Francis Edward McGillick Foundation*, 642 A.2d 467 (Pa. 1994). **Under the [UTA], the term beneficiary includes contingent beneficiaries**. 20 Pa.C.S. § 7703 [(defining "beneficiary" to include a contingent beneficiary)].

Orphans' Court Opinion, 9/18/23, at 7-8 (emphasis and some paragraph breaks added; capitalization modified).

The orphans' court's reasoning is supported by the law and the record, and we agree with its conclusion. Thus, we affirm on this basis in concluding Appellant's second issue merits no relief. *See id.*

In his third issue, Appellant contends the orphans' court erred in denying his Section 7763 petition, where partition of the Farm, a "non-income producing asset," serves the best interests of the beneficiaries of the Michael Ward Trust. *See* Appellant's Brief at 15-18. Appellant claims, "[w]ith the current and future maintenance costs of the Farm, it is in the best interest of

[the Michael Ward] Trust to sell its share of the [F]arm and invest the proceeds." *Id.* at 18.

Appellant acknowledges the intent of the Settlors is critical and must prevail. *Id.* at 16. However, Appellant points out that the Original Trust Agreement "and Dorothy's Will do not provide any guidance as to Dorothy's intent regarding the Farm." *Id.*; *see also id.* at 18 ("There is no provision in the [Original] Trust [Agreement] that the Farm be retained."). According to Appellant,

> [t]he Settlor[s] could have included language that the Farm was to be retained but did not do so. The [orphans'] court should not read language into the Trust that is not there[,] when doing so would violate the absolute right to partition the Farm as provided by law.

Appellant's Reply Brief at 7 (some capitalization modified).

First National counters the orphans' court correctly denied Appellant's Section 7763 petition, as to rule otherwise would be contrary to (1) the best interests of the beneficiaries of the Michael Ward Trust; and (2) the intent of the Settlors. *See* First National Brief at 14-21. First National claims that since "the Michael Ward Trust[] is intended to benefit successive generations of beneficiaries, a trustee must consider the interests of both the present beneficiaries and the remainder beneficiaries." *Id.* at 16 (citing *In re Estate of Feinstein*, 527 A.2d 1034, 1037 (Pa. Super. 1987) ("Subject to the specific language of the trust instrument, a trustee under Pennsylvania law must exercise discretion in preserving the balance of interests between successive

beneficiaries."")); *see also id.* at 17 (pointing out the "Settlors also established a termination date for the [Original] Trust of 21 years after the death of the last life in being at the time of the [Original] Trust's creation, thereby ensuring that the [Original] Trust would outlive" the sons).

First National reasons,

[t]he unambiguous terms of the [Original] Trust Agreement and the circumstances surrounding its creation and funding evince a clear intent on the part of the Settlors that the Farm was to be preserved for their greater family and successive generations of their descendants[,] and that no single child of theirs was to hold a unilateral power to make decisions respecting the Farm.

*Id.* at 18. Finally, First National correctly points out

the evidence and testimony presented at the [partition] hearing demonstrated that the Farm has historically operated as an effectively revenue neutral asset, generating income roughly equivalent to its expenses….

*Id.* at 19 (citations to record omitted).

George's Children echo First National's foregoing arguments. George's Children agree the orphans' court "correctly found that the Settlors' intent, which is the polestar, was [] to prevent [Appellant], or any of [the sons], from unilaterally seeking to partition the [F]arm." George's Childrens' Brief at 9; *see also id.* ("This conclusion is amply demonstrated by several facts[,]" including that the Settlors (1) "did not sell the [F]arm during their lifetimes, and Dorothy [] allowed [it] to pour over to [the Original T]rust by her will; and (2) "saw fit to name and retain corporate co-trustees, precisely so that

one such as [Appellant] could not" unilaterally seek to partition trust property).

As stated above, UTA Section 7763(a.1) provides that where, as here, there is a dispute between trustees and no majority exists,

> unless otherwise provided by the trust instrument, the court in its discretion, may … direct the exercise or nonexercise of [] power [under the trust,] **as it deems necessary for the best interest of the trust**.

20 Pa.C.S.A. § 7763(a.1) (emphasis added).

This Court has explained, "Section 7763(a.1) does not set forth any procedure or guidelines by which an orphans' court should determine *how* it is to resolve a deadlock among trustees."  **In re Jackson**, 174 A.3d at 29 (italics in original).  However, the **Jackson** Court opined that the

> general principles that courts are to follow in resolving trust matters are familiar: "The interpretation of a trust … presents a question of law.  As such, our standard of review is *de novo*, and our scope of review is plenary."
>
> ….
>
> Certain principles guide trust interpretation.  **The settlor's intent is the cornerstone** of such an endeavor.  … [I]t is hornbook law that the pole[]star in every trust is the settlor's intent and that intent must prevail.  We are not permitted to construe a provision in a trust so as to destroy or effectually nullify what has always been considered the inherent basic fundamental right of every owner of property to dispose of his own property as he desires, so long as it is not unlawful.  Critically, the settlor's intent must be ascertained from the language of the trust, and we give effect, to the extent possible, to all words and clauses in the trust document.

*Id.* at 29-30 (citations, brackets, ellipses and quotation marks omitted; emphasis added).

The *Jackson* Court further recognized that,

[w]hen the terms of a written trust instrument are clear and certain, parol or extrinsic evidence is not admissible to explain the settlor's intent. However, such evidence is admissible to prove intent where the written instrument is ambiguous.

*Id.* at 30 (citation omitted).

Among the circumstances that may be of importance in determining the terms of a trust … in matters about which a written instrument is silent or ambiguous, are the following: (1) the situations of the settlor, the beneficiaries, and the trustee, including such factors as age, legal and practical competence, personal and financial circumstances, and the relationships of these persons and these factors to each other; (2) the value and character of the trust property; (3) the purposes for which the trust is created; … [and] ([4]) the circumstances under which the trust is to be administered[.]

*Id.* at 31 (quoting Restatement (Third) of Trusts § 4, cmt. a (2003)).

Instantly, in its opinion, the orphans' court determined it properly denied Appellant's Section 7763 petition, as partition of the Farm was not in the best interest of the Michael Ward Trust or consistent with the intent of the Settlors. The court competently reasoned:

Both [Appellant and First National] have presented valid arguments for their respective positions. [Section] 7763(a.1) does not allocate or divide [a] co-trustee's decision-making authority among trustees. The [Original] Trust Agreement[,] under paragraph Second[,] affords [First National] sole authority to make distributions of income to various beneficiaries of the [Original] Trust[. H]owever, as to the general powers of the trustees under paragraph Eighth, there is no division of powers or method to resolve deadlocks.

- 23 -

\* \* \*

A review of the … [Original] Trust [Agreement] makes it clear its purpose is to provide support and maintenance for the issue of the Settlor[]s and their spouses. The [Original] Trust [Agreement] provides authority to trustees to hold real estate, but makes no specific mention of the … Farm or how it should be used by the [Original] Trust. Under these circumstances, it is necessary to examine the record made at the [partition] hearing.

William … predeceased his wife[, Dorothy,] and Dorothy [] did not sell the [Farm] prior to her death. Further, [**Dorothy's**] **will contains no direction that the** [**Farm**] **should be sold**. **This is unlikely to be** [**an**] **oversight as the Settlors lived on the** [**Farm,**] **and each one of the sons received land adjoining the Farm**. At the time of Dorothy['s] [] death, the Farm was a place the family gathered and where they would use the Farm for recreation.

The [Original] Trust was not created to maintain … [the] Farm[;] it is not a directed asset. However, as noted …[,] Dorothy allowed the Farm to pour over to [the Original] Trust by her will. So **the record at** [**the partition**] **hearing supports a finding that Dorothy** [] **intended the Farm to pass to the** [**Original**] **Trust and to be a trust asset**. **Even** [**Appellant**] **concedes he and his family made use of the Farm for years**[,] including stabling horses on the property for his daughters.

That the **Settlors intended the Farm to be shared by their issue** was apparently the understanding of the sons. In 2012, when the [Farm] was actually deeded to the [sons' three respective sub-]trusts, nothing in the record indicates that a conveyance for common use (tenants in common) was opposed. [**Appellant worked**] **on the Farm as a major contributor of labor until 2018**.

Based on the above analysis, it would appear that **while the primary purpose of the** [**Original**] **Trust is support and maintenance of the Settlor**[**'**]**s issue, it was not its sole purpose, as the Settlors never directed the** [**Farm**] **to be sold to maximize income**. Based on the [Original] Trust Agreement and the factual record, the [orphans'] court finds the purpose of the [original] Trust is to support the issue of the Settlors[;] ownership of the Farm cannot be allowed to erode that.

- 24 -

If the maintenance expenses of the Farm impair[] the sustainability of the [Original] Trust, the trustees['] duty would be to dispose of it. However, at present[,] Ward Trucking is providing substantial support to defray expenses. The Michael [] Ward [T]rust is[,] in general[,] increasing in value[,] while paying annually substantial distribution[s] to [Appellant's daughters]. **The Farm expense account for 2022 and 2023 has a positive balance, and plans are in place to address repairs and maintenance without unduly burdening the** [**Michael Ward**] **Trust**.

The value of the Farm …[,] based on the most recent appraisal[,] is rising in value.[13] At this point, **there is no evidence that ownership of the Farm harms the** [**Michael Ward**] **Trust**. **Retaining the** [**Farm**] under its present arrangement **is consistent with the intent of Settlors**[,] **as demonstrated by the** [**Original**] **Trust** [**Agreement**] **and the record**. Of course, if circumstances change so would the outcome. Based on the above, the [orphans'] court will deny [Appellant's Section 7763 petition] without prejudice.

Orphans' Court Opinion, 9/18/23, at 12, 13-14 (emphasis, footnote, and some paragraph breaks added; capitalization modified).

The orphans' court's findings and conclusions are supported by the law and record. We discern no error or abuse of its discretion in denying Appellant's Section 7763 petition, as this ruling served the best interest of the Michael Ward Trust and is consistent with the Settlors' intent. **See** 20 Pa.C.S.A. § 7763(a.1); **see also generally In re Jackson**, *supra*. Appellant's third issue does not merit relief.

---

[13] We reiterate that the Farm comprises no more than 12 percent of the total value of the Michael Ward Trust.

Because Appellant's fourth and fifth issues are related, we address them simultaneously. Appellant argues the orphans' court erred in failing to find that First National has an impermissible conflict of interest. *See* Appellant's Brief at 11-15. Appellant claims a conflict exists, where First National (1) serves as corporate trustee for both the Michael Ward Trust and the George Ward Trust; and (2) breached its duty of impartiality by placing the interests of the remainder beneficiaries of the Michael Ward Trust before those of the Trust's current beneficiaries (*i.e.*, Appellant's daughters). *Id.* Appellant points out that,

> [i]n opposing [Appellant's Section 7763 petition], First National included [] affidavits from all the remainder beneficiaries [of the Michael Ward Trust]. One cannot serve two masters. *See*[] *Jedwabny v. Phila. Tr*[*ansp.*] *Co.*, [135 A.2d 252, 254-55] (Pa. 1957) [("No attorney can serve two opposing litigants any more so than one man can serve two masters.")].

Appellant's Reply Brief at 9-10. According to Appellant, "[b]ecause of the conflict, First National should abstain from taking any position with respect to the filing of the partition action by the Michael Ward Trust." Appellant's Brief at 12.

First National counters the orphans' court properly rejected Appellant's claim of its conflict of interest. *See* First National Brief at 26-29. First National correctly states that Appellant's claim of its conflict of interest "can only be understood as a claim that [First National] has breached its duty of loyalty to the beneficiaries of the Michael Ward Trust." *Id.* at 26. First National further emphasizes that Appellant claims a conflict of interest, "while at the same time

denying that his concurrent status as [i]ndividual Trustee and income beneficiary of the Michael Ward Trust presents a conflict of interest on his part," *i.e.*, to the extent Appellant's interest conflicts with those of the remainder beneficiaries of the Michael Ward Trust. *Id.* at 26 n.10.

George's Children agree no conflict of interest exists, where (1) First National's "opposition to partition is based on the best interests of the [Michael Ward] Trust and independent of the desires of the other sub-trust beneficiaries"; and (2) "maintaining ownership of the Farm [] is in the best interest of the [Michael Ward] Trust[,] and consistent with the trust documents and Settlor[s'] intent." George's Children's Brief at 7, 8 (some capitalization modified).

UTA Section 7773 governs a trustee's duty of impartiality, and provides as follows:

> If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing and distributing the trust property, giving due regard to the beneficiaries' respective interests in light of the purposes of the trust. **The duty to act impartially does not mean that the trustee must treat the beneficiaries equally. Rather, the trustee must treat the beneficiaries equitably <u>in light of the purposes of the trust</u>.**

20 Pa.C.S.A. § 7773 (emphasis added). "[T]he primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal." *Jerome Markowitz Tr. v. Markowitz*, 71 A.3d 289, 303 (Pa. Super. 2013).

UTA Section 7772 governs a trustee's duty of loyalty, providing "[a] trustee shall administer the trust solely in the interests of the beneficiaries."

20 Pa.C.S.A. § 7772(a). Section 7772(c) defines what constitutes a conflict of interest. *Id.* § 7772(c). A conflict includes, *inter alia*, a sale, purchase, exchange, or other disposition of property to a trustee, a trustee's spouse, parent or spouse of parent. *Id.*

Instantly, the orphans' court determined no conflict of interest existed:

Under the terms of the [Original] Trust, paragraph Eighth, the Trustees were given discretionary power applicable to all real and personal property to [] retain any property received by them[,] and under [sub-paragraph] (e)[,] to sell [said property]. A trust's provisions govern[] its operation. A corporate trustee does not breach its duty when it acts pursuant to the powers granted to it under the trust. *In re Estate of Warden*, 2 A.3d 565 (Pa. Super. 2010). … [First National] has argued the beneficiaries of the other [] sub-trusts are opposed to partitioning the Farm[,] but [First National has also] consistently based it[s] opposition in terms of the best interests of the [Michael Ward] Trust. **Under the terms of the [Original] Trust and the 1988 [Order], the trustees are charged to exercise independent judgment**. … [B]est interests are to be defined according to the trust terms and not according to the subjective will of the beneficiaries. *In re McKinney*, 6[7] A.3d 824[, 831] (Pa. Super. 2013) [(stating it is "clear that the 'best interests' are to be defined according to the trust terms and not according to the subjective will of the beneficiaries").]

In this case, [First National,] based on its employees['] training and experience[,] does not believe partition is in the [Michael Ward] Trust's best interests. **Nothing has been entered into evidence to show [that First National] has in any way breached a duty[,] or that the performance of its duties under the terms of the [Michael Ward] Trust [and George Ward Trust] is a conflict of interest**. Of course, exactly the same arguments are applicable to [First National's] claims that [Appellant,] as trustee of [the Michael Ward Trust,] has a conflict for not fairly considering the wishes of the beneficiaries of the [other sub-]trust[s,] who are vested beneficiaries of a future interest in the Michael [] Ward Trust. [Appellant] has put forth a number of coherent and sensible arguments why the Farm should be partitioned, and why the

[Michael Ward] Trust would benefit from that partition. It is true many of the beneficiaries are opposed [to partition], but as noted above, the subjective will of the beneficiaries does not define the duties of a trustee. For the above reasons, the [orphans'] court does not find merit in either side's argument [with respect to] conflicts of interest.

Orphans' Court Opinion, 9/18/23, at 10-11 (emphasis added; some capitalization modified).

The orphans' court's reasoning is supported by the record and the law, and we agree with its conclusion that First National has no conflict of interest. Accordingly, Appellant's fourth and fifth issues merit no relief.

In his sixth issue, Appellant argues the orphans' court erred in admitting irrelevant evidence at the partition hearing (namely, testimony as to the historical use of the Farm by the Settlors, the sons, and their families). Appellant's Brief at 18.[14] Appellant claims the "use of the farm is irrelevant to what is in the best interests of the Michael Ward[] [T]rust." *Id.*; *see also id.* (asserting the orphans' court was improperly "swayed by this evidence and

---

[14] We note Appellant failed to cite to any authorities in his scant argument on this issue. *See* Appellant's Brief at 18; Appellant's Reply Brief at 12-13. Pennsylvania Rule of Appellate Procedure 2119(a) requires appellants to develop an argument with citation to and analysis of relevant legal authority. Pa.R.A.P. 2119(a); *see also In re Est. of A.J.M.*, 308 A.3d 844, 858 (Pa. Super. 2024) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant." (citation omitted)). "The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119." *Wolf v. Santiago*, 230 A.3d 394, 401 (Pa. Super. 2020) (citation omitted). Nevertheless, we will not find waiver and address the merits of Appellant's claim. *Cf. A.J.M.*, 308 A.3d at 859 (finding waiver of undeveloped claim).

testimony"). Appellant notes, for the first time in his reply brief, that his counsel raised a relevancy objection at the partition hearing to testimony about the Farm's historical use. Appellant's Reply Brief at 12-13 (citing N.T., 6/20/23, at 65-66).

First National counters the orphans' court did not err in admitting relevant evidence as to the historical use of the Farm. *See* First National Brief at 30-31. First National argues that the orphans' court was tasked, pursuant to 20 Pa.C.S.A. § 7763(a.1), with determining the best interests of the Michael Ward Trust, which required an inquiry into the Settlors' intent under the Original Trust. First National Brief at 30. According to First National, because this intent could not be gleaned solely from the Original Trust Agreement, the orphans' court properly considered extrinsic evidence that could clarify the Settlors' intent, including their historical use of the Farm. *Id.*

> George's Children agree with First National, asserting that
>
> evidence regarding the use of the Farm over the years is certainly relevant to determining what is in the best interest of the [Michael Ward] Trust. For instance, had the Settlors and their family never used or visited the Farm[,] that would be very relevant in determining the Settlor[s'] intent and whether or not the property should be sold.

George's Children's Brief at 12 (some capitalization modified).

"Decisions regarding the admissibility of evidence are vested in the sound discretion of the [orphans'] court, and, as such, are reviewed for an abuse of discretion." *In re Est. of Byerley*, 284 A.3d 1225, 1239 (Pa. Super. 2022) (citation omitted). An abuse of discretion occurs where the orphans'

court "reaches a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will." *Id.* (citation omitted).

> Generally, relevant evidence is admissible and irrelevant evidence is inadmissible. Evidence is relevant if it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Pa.R.E. 401. The threshold for relevance is low given the liberal "any tendency" prerequisite. *Id.* … Relevant evidence "is admissible, except as otherwise provided by law." Pa.R.E. 402.

*In re Est. of Byerley*, 284 A.3d at 1239 (brackets in original; emphasis omitted) (quoting *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019)).

Here, the orphans' court determined that evidence regarding the historical use of the Farm was both relevant and admissible:

> One of the most contested points between the parties is the cost of the upkeep on the Farm and whether continued ownership of the Farm affects the sustainability of the [Michael Ward] Trust. Also, could the [Michael Ward] Trust be adversely affected by [the Farm's] sale[?] **To resolve this issue requires a review of the [Settlors and their] families' use of the Farm over time**.

Orphans' Court Opinion, 9/18/23, at 5 (emphasis added; some capitalization modified). We agree.

Contrary to Appellant's claim, the historical use of the Farm was relevant for establishing the best interest of the Michael Ward Trust, as well as the Settlors' intent. We are persuaded by First National's argument:

> The orphans' court was charged with determining the best interest of the Michael Ward Trust which … implored an inquiry into the Settlors' intent. Finding that this intent could not be sufficiently gleaned from the [Original] Trust Agreement alone, the orphans' court was entitled to hear relevant extrinsic evidence to aid in

- 31 -

ascertaining the intent. This included testimony of the historical use and operation of the Farm, including the fact that the Farm was never operated as a profit-producing asset.

First National Brief at 30-31 (some capitalization modified); *see also In re Jackson*, 174 A.3d at 30 (extrinsic evidence is admissible to explain a settlor's intent, where the written trust instrument is ambiguous). Discerning no error or abuse of the trial court's discretion, Appellant's sixth issue merits no relief.

In his seventh issue, Appellant claims that because he holds a one-third interest in the Farm as a tenant in common, and because tenants in common generally have an absolute right to partition, the orphans' court should have granted his Section 7763 petition. *See* Appellant's Brief at 19. Appellant cites only a single authority, *Lombardo v. DeMarco*, 504 A.2d 1256 (Pa. Super. 1985), where we stated: "The rule is that the right to partition is an incident of a tenancy in common, and an absolute right." *Id.* at 1260 (citations omitted); Appellant's Brief at 19. According to Appellant, the Michael Ward Trust "has an absolute right to file a partition action except for [First National] refusing on behalf of other beneficiaries to allow the partition action to be filed." *Id.*; *see also* Appellant's Reply Brief at 7 ("The other [sub-]trusts are trying to carve out an exception to the absolute right to partition.").

First National counters the orphans' court did not err, and that Appellant's claim is "inapposite," arguing:

This case does not involve a co-tenant of the Farm attempting to "tie the hands of a fellow co-tenant from realizing his undivided property interest." Brief of Appellant at 19. This case involves a disagreement of co-trustees as to the proper course of action. The

- 32 -

orphans' court appropriately resolved the dispute of the Co-Trustees in accordance with Section 7763 .... Without the consent of [First National], or the approval of the [orphans'] court, [Appellant] has no right to partition the Farm.

First National Brief at 32-33 (some capitalization modified).

We agree. We have already concluded that the orphans' court did not err in resolving the dispute between Appellant and First National pursuant to 20 Pa.C.S.A. § 7763(a.1). Thus, Appellant's status as a tenant in common of the Farm is unavailing, as is *Lombardo*. Appellant's seventh issue does not merit relief.

In his eighth and final issue, Appellant argues the orphans' court erred in denying his Section 7763 petition and ruling that, "if circumstances change in the future, [Appellant] could then file a partition action." Appellant's Brief at 20. According to Appellant, "[t]he circumstances are unlikely to change" given the undisputed fact that "Ward Trucking provides significant financial support to the Farm." *Id.* Appellant complains,

Ward Trucking[, which] does not even own an interest in the Farm[,] is preventing [the] Michael Ward[] Trust from realizing its value in the one-third interest because Ward Trucking is owned and controlled by the beneficiaries of the other [sub-]trusts.

Appellant's Reply Brief at 12. Appellant again cites to *Lombardo* as his sole authority in support of this claim. *See* Appellant's Brief at 20; Appellant's Reply Brief at 12.

First National counters the orphans' court did not err in denying Appellant's Section 7763 petition without prejudice. **See** First National Brief at 33-34. First National argues,

> [Appellant] seems to complain that forces outside his control, namely[,] Ward Trucking's provision of financial support and free labor to the Farm (conditions which in fact benefit the Michael Ward Trust and the [other sub-t]rusts), will prevent the Farm from ever becoming a burdensome … holding of the Michael Ward Trust[,] as he wishes it to be so as to have a justifiable basis to divest [the Farm] from the Michael Ward Trust.

*Id.* at 34. Likewise, George's Children claim "Appellant's speculative assertion that circumstances are unlikely to change is not grounds for reversing" the orphans' court. George's Children's Brief at 14.

We agree with First National and George's Children, and discern no error by the orphans' court. The court appropriately denied Appellant's Section 7763 petition without prejudice, in the event that circumstances change in the future and retaining the Farm is no longer in the best interest of the Michael Ward Trust. Thus, Appellant's final issue merits no relief.

Based on the foregoing, we affirm the orphans' court's order denying Appellant's Section 7763 petition without prejudice.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 07/30/2024